1996 SD 22

**LDL CATTLE COMPANY, INC.,**
Plaintiff and Appellee,

v.

**Bill GUETTER and Roger Guetter, d/b/a
Northern States Elevator Construction,
Defendants and Appellants.**

Nos. 19072, 19081.

Supreme Court of South Dakota.

Argued Sept. 13, 1995.

Decided March 3, 1996.

a verdict in favor of NSE. The trial court ordered a new trial on the basis that the evidence did not support the jury's verdict. NSE appealed the order granting a new trial and LDL filed a notice of review concerning other issues. We reverse the granting of a new trial and affirm the trial court on the other issues.

## FACTS

[¶ 2] LDL is a large custom cattle-feeding operation located near the town of Ipswich in rural Edmunds County, South Dakota. NSE is in the business of constructing and selling grain and feed-handling structures and equipment. Its principal place of business is Lucan, Minnesota, but it commonly undertakes construction projects in South Dakota, North Dakota, Montana and Nebraska. William Guetter and Roger Guetter are partners and the owners of NSE.

[¶ 3] In 1991, LDL hired NSE to build a 22 foot I-beam steel "superstructure" which would hold two 1600 bushel overhead tanks or bins. The superstructure was being constructed directly west of and adjacent to four large silos and directly within and above the existing feed mill building on LDL's property.

[¶ 4] By October 8, 1991, the I-beam superstructure had been installed and bolted into the cement pad on the floor of the feed mill building. On October 8, 1991, NSE employees were welding with electrical arc welders to secure beams that had been previously tacked together. Conflicting testimony was presented at the trial as to whether NSE employees had also been welding with an acetylene cutting torch on that day. Immediately below where the welding and construction was occurring was a roller mill and a three foot deep pit. In the pit was an accumulation of corn, chaff, grain dust, and other debris, all of which are combustible.

[¶ 5] The welding of the superstructure was discontinued between 4:30 and 5:00 p.m. on the 8th because it was too windy to risk placing the bins onto the I-beam superstructure. NSE employees then swept up the area under the superstructure and proceeded to continue painting the bins which were

James E. McMahon, Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiff and appellee.

Gary P. Thimsen, Kristine L. Kreiter of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellants.

LEE D. ANDERSON, Circuit Judge.

[¶ 1] LDL Cattle Company Inc. (LDL) brought suit against Northern States Elevator Construction (NSE) claiming that NSE was negligent in causing a fire which destroyed LDL's property. Following a two day trial, an Edmunds County jury returned

located in LDL's machine shed directly northeast of the feed mill. Prior to completing their workday at approximately 7:30 p.m., NSE employees walked through the feed mill and inspected the area under and around the I-beam superstructure. Nothing out of the ordinary was detected during the inspection.

[¶ 6] At some time during the night of October 8, 1991, or the early morning hours of October 9, 1991, a fire broke out in LDL's feed mill. The fire was discovered between 5:30 and 6:00 a.m. on October 9th, 1991, by LDL employees, who called the Ipswich fire department to the scene. In subsequent investigations, it was discovered that the clock in the feed mill building had stopped at 4:56 a.m. Very little of the feed mill was left standing after the ensuing fire. LDL suffered damages of $647,099.

[¶ 7] The State Fire Marshal's Office was called in to investigate whether or not the fire was intentionally set. The fire marshals were unable to determine with certainty where the fire had originated, what the actual ignition source of the fire was, or whether the welding had in any way contributed to the fire. The fire marshals were able to conclude the fire was not intentionally set. At trial the fire marshals testified it was not likely that any remnants of welding, which had ceased at 5:00 p.m. on October 8th, could smolder undetected for nine to twelve hours before it would erupt into a blaze.

[¶ 8] Three private fire investigators were subsequently called in by LDL to investigate the cause of the fire. One of these investigators determined the fire was not caused by lightning nor was it electrical in nature. LDL's other two investigators testified to their opinion that NSE's welding was the cause of the fire.

[¶ 9] In its suit against NSE, LDL alleged that it sustained damages as result of a fire which was the proximate result of the negligence of NSE. The negligence was alleged to be due to: 1) the use of a cutting torch and welder by NSE employees in an area of combustible materials and the failure to take proper precautions to prevent the fire; and 2) the failure of NSE employees to take proper precautions in the detection and extinguishment of the fire.

[¶ 10] An Edmunds County jury returned a verdict in favor of NSE on January 11, 1995. On January 12, 1995, the trial court on its own initiative placed the parties on notice that it would grant a motion for a new trial on the grounds the verdict was inconsistent with the evidence presented at trial pursuant to SDCL 15–6–59(a)(6).

[¶ 11] Thereafter, LDL moved the court for a new trial under SDCL 15–6–59(a)(1), (3), (6) and (7). On January 25, 1995, the trial court ordered "the judgment be vacated, the jury verdict for the defendants be set aside and a new trial be granted pursuant to SDCL 15–6–59(a)(6)."

## ISSUES

I.  Whether the trial court abused its discretion in granting a new trial?

II.  Whether the trial court erred by excluding evidence that both parties had insurance?

III.  Whether the trial court erred in giving jury instructions number 22 and 23 on circumstantial evidence?

## STANDARD OF REVIEW

[¶ 12] A trial court may order a new trial on its own initiative pursuant to SDCL 15–6–59(d), for any reason which it may have granted a new trial based upon a motion by a party. *Case v. Murdock*, 488 N.W.2d 885, 888 (S.D.1992). However, before a trial court exercises its inherent power to grant a new trial for reasons not advanced by the parties, it must be "satisfied there has been a mistrial, or a clear miscarriage of justice, growing out of a failure of the court itself to discharge the duties of its office...." *Junge v. Jerzak*, 519 N.W.2d 29, 32 (S.D.1994) (quoting *Larsen v. Johnson*, 43 S.D. 223, 178 N.W. 876, 877 (1920)).

[¶ 13] It is a well-established rule in South Dakota that a trial court has broad discretion to grant a new trial on the ground of insufficient evidence. *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D.1980). Nevertheless, a jury's verdict should not be set aside "except in extreme cases where it is the result of passion or prejudice or the jury has

palpably mistaken the rules of law....” *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983)(citing *Simons v. Kidd*, 73 S.D. 306, 42 N.W.2d 307, 309 (1950)). A verdict should only be set aside if the jury's conclusion was unreasonable and a clear illustration of its failure to impartially apply “the reasoning faculty on the facts before them”. *Lewis*, 290 N.W.2d at 497 (quoting *Drew v. Lawrence*, 37 S.D. 620, 623, 159 N.W. 274, 277 (1916)).

[¶ 14] If a court determines an injustice has occurred by virtue of the jury's verdict, the proper remedy is to grant a new trial. *Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D.1985). The decision to order a new trial stands on firmer footing than the decision to deny a new trial. *Id.* at 632. Nevertheless, this Court may overturn a trial court's decision granting a new trial upon a “clear showing of an abuse of discretion.” *Junge*, 519 N.W.2d at 31 (quoting *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D. 1990)). An abuse of discretion has transpired only if “no judicial mind, in view of the law and the particular circumstances of the particular case, could reasonably have reached such a conclusion.” *Junge*, 519 N.W.2d at 31 (quoting *Jensen v. Weyrens*, 474 N.W.2d 261, 263 (S.D.1991)). In addition, in the determination of whether an abuse of discretion has occurred, the evidence must be viewed in a light most favorable to the verdict. *Stoltz*, 336 N.W.2d at 657.

[¶ 15] **I. Whether the trial court abused its discretion in granting a new trial?**

[¶ 16] NSE asserts the trial court abused its discretion when it granted LDL a new trial. NSE asserts the conflicting evidence presented at trial created questions of fact for the jury to decide and by granting a new trial, the trial court improperly substituted its judgment for that of the jury.

[¶ 17] The order granting a new trial was not based on an apparent mistrial or other failure of the trial court to discharge its duties properly. Therefore, the existence of a conflict in evidence is a controlling consideration which governs a court's decision to set aside a jury verdict. *Lewis*, 290 N.W.2d

at 497. However, “the mere presence of a conflict in the evidence does not license a trial court to weigh conflicting evidence and substitute its own judgment for that of the jury, simply because it disagrees with the verdict.” *Id.* at 497; *Westover v. East River Elect. Power*, 488 N.W.2d 892, 896 (S.D. 1992). “Questions relating to negligence ... are question[s] of fact for determination by the jury in all except the rarest of instances.” *Stoltz*, 336 N.W.2d at 657.

[¶ 18] Conflicting testimony was presented during the trial on whether the welding performed by NSE employees on October 8th was in fact the cause of the fire. In its January 12th letter to counsel, the trial court contended there was uncontroverted evidence that NSE's welding had taken place over combustible materials and the defendants had admitted to taking no safety precautions. NSE employees testified as to the safety precautions which had been undertaken. This testimony included what different kinds of environments necessitate the taking of particular types of safety precautions, that the amount of combustible materials present at the LDL facility were not of such a nature as to compel the wetting down or laying down of safety blankets, that sweeping and cleaning of the area under the I-beam superstructure did occur after the welding had ceased, and that a walk-through inspection of the area under the I-beam superstructure did occur at the end of the day on October 8th.

[¶ 19] In light of the testimony presented at trial, it is particularly important to keep in mind the standards set forth by this Court. When reviewing the sufficiency of evidence to support a verdict, the trial court should not weigh the conflicting evidence or decide upon the credibility of the witnesses. *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 903 (S.D.1994)(citing *State v. Hurst*, 507 N.W.2d 918, 923 (S.D.1993) and *Musch v. H–D Co-op., Inc.*, 487 N.W.2d 623, 626 (S.D. 1992)). “These functions lie solely within the province of the jury as the ultimate trier of fact.” *State v. Burtzlaff*, 493 N.W.2d 1, 4 (S.D.1992). As such, the evidence which was presented at trial clearly supports a finding

by the jury that the actions did in fact constitute safety precautions and were sufficient for the environment present at the LDL facility on October 8th.

[¶ 20] The trial court in its January 12th letter to counsel also stated there was uncontroverted evidence that an acetylene torch emits slag. The jury was presented with conflicting testimony on the issue of whether an acetylene torch was used on October 8th. Additionally, evidence was presented through the fire marshals' testimony that welding slag cools considerably when it falls and it was unlikely that slag would smolder for twelve hours before bursting into flame. Ultimately, a question for the jury revolved around whether an acetylene torch was or was not used on October 8th by NSE employees. The sole judge of the witnesses' credibility is the jury, and it is up to them to determine how much of the evidence of certain witnesses they believe. *Grubbs v. Foremost Ins. Co., Grand Rapids*, 82 S.D. 98, 141 N.W.2d 777, 779 (1966). In situations where one party bases its case almost entirely upon opinion testimony and the jury rejects that testimony, the jury's ensuing verdict cannot be said to be unreasonable. *Kusser*, 453 N.W.2d at 621.

[¶ 21] The trial court's letter also stated there was "no other credible evidence presented to the jury of any source of fire that would be as *probable* as the slag." (emphasis added). The choice of the use of the word "probable" is telltale in itself. It aptly demonstrates the evidence at trial did not definitively show the welding slag to be the source of the fire. LDL's evidence, submitted through its experts, merely showed slag was a probable or possible source of the fire. As to how probable a source it was is a question for the jury, not the trial judge. Although NSE did not offer expert testimony as to the cause of the fire, a jury is not bound to accept the undisputed testimony of a plaintiff's witness as absolutely true when the evidence is weakened somewhat on cross-examination and the defendant introduces no evidence to rebut it. *Moore v. Kluthe & Lane Ins. Agency, Inc.*, 89 S.D. 419, 234 N.W.2d 260, 268 (1975).

[¶ 22] This Court recently ruled that the "purpose of expert testimony is to assist the jury as the trier of fact and not to supplant it." *Bridge v. Karl's Inc.*, 538 N.W.2d 521, 525 (S.D.1995)(citing *Olesen v. Lee*, 524 N.W.2d 616, 620 (S.D. 1994)). The value of an expert's opinion is "no better than the facts upon which it is based." *Bridge*, 538 N.W.2d at 525. Such testimony "proves nothing if its factual basis is not true" and "may prove little if only partially true." *Id.* (citing *Podio v. American Colloid Co.*, 83 S.D. 528, 162 N.W.2d 385, 387 (S.D.1968)). "The credibility of witnesses and the evidentiary value of their testimony falls solely within the province of the jury." *Bridge*, 538 N.W.2d at 525 (citing *Miller v. Hernandez*, 520 N.W.2d 266, 272 (S.D.1994)).

[¶ 23] The jury was properly instructed that LDL had the burden of proving that NSE was negligent and that NSE's negligence was the proximate cause of LDL's damages. Based upon the record and all of the evidence, the jury could have found that LDL failed to prove its case. It cannot be said that this jury's verdict was unreasonable and unsupported by the evidence, or was "the result of juror passion, prejudice or mistake of law." *Bridge*, 538 N.W.2d at 525 (citing *Miller*, 520 N.W.2d at 272).

[¶ 24] There is evidence to support the verdict. Therefore the trial court's conclusion to the contrary, which forms the basis of the order granting a new trial, is a conclusion which "no judicial mind could reasonably reach in view of the law and the particular circumstances of the case." *Junge*, 519 N.W.2d at 31. We hold that the granting of a new trial was an abuse of the trial court's discretion, and reverse its ruling.

[¶ 25] LDL raises two issues on notice of review, which we now address.

### [¶ 26] II. Whether the trial court erred by excluding evidence that both parties had insurance?

[¶ 27] Evidence that a person was or was not insured against liability is generally inadmissible upon the issue of whether that person acted negligently. SDCL 19–12–13. This rule evolved as a way to protect defendants from the possibility that a jury may be

influenced in its findings of liability or damages by the mention of insurance. *Lowe v. Steele Const. Co.*, 368 N.W.2d 610, 613 (S.D. 1985). This Court has previously stated, "[T]here is no doubt that the presence of liability insurance is a matter likely to prejudice the jury." *Arbach v. Gruba*, 89 S.D. 322, 232 N.W.2d 842, 845 (1975).

[¶ 28] A trial court may grant an exception to the general rule "when evidence is relevant to a material issue or matter involved." *Brue v. Brue*, 86 S.D. 1, 3, 190 N.W.2d 64, 65 (1971). It is the moving party's burden to advance a theory which brings the questioned evidence within the exception. *Id.*

[¶ 29] LDL asserts it was necessary for the jury to be informed of insurance coverage to clear up misperceptions advanced by NSE. However, LDL has failed to show the relevance of the introduction of insurance coverage as to a material issue in the case. LDL claims that it needed to present evidence of insurance coverage to clear up misperceptions before the jury as to when LDL first blamed NSE for the fire and when LDL's expert, Chris Rallis, first mentioned an acetylene torch. However, LDL has failed to show why the evidence of insurance coverage was necessary or relevant to negate these claimed misperceptions. We find that the trial court did not err in its refusal to allow the jury to hear that both parties had insurance.

[¶ 30] **III. Whether the trial court erred in giving jury instructions 22 and 23 on circumstantial evidence?**

[¶ 31] LDL alleges the trial court erred in giving jury instructions 22 [1] and 23 [2] regarding circumstantial evidence. LDL's objection is limited to the optional or last paragraph in each instruction pertaining to the

1. Jury instruction 22, which is South Dakota Civil Pattern Jury Instruction 21–02, as submitted, read:
   There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.
   As a general rule, the law makes no distinctions between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.
   In order that the plaintiff's theory or claim may be established by circumstantial evidence alone, the facts and circumstances which you find to have been established by the evidence must not only be consistent with plaintiff's theory or claim, but also inconsistent with any rational theory or reasonable explanation therefor.

2. Jury instruction 23, which is South Dakota Civil Pattern Jury Instruction 1–03–(1), as submitted, read:
   When evidence of facts and circumstances is offered as a basis for an inference to be drawn therefrom as to a fact in issue, it is known as circumstantial evidence. If there is a conflict in the evidence as to such facts and circumstances, it is for the jury to determine such conflict under the Court's instructions. On the basis of such facts and circumstances as so found by the jury, it is for the jury to deduce therefrom such inference or inferences as may reasonably be drawn without resort to guess, speculation or conjecture. When the jury considers only one inference relative to the disputed fact question can reasonable be drawn, such inference may be determined by the jury to be supported by circumstantial evidence. Where, however, the jury considers that two or more different and conflicting inferences can reasonably be drawn from such facts and circumstances, it is for the jury to determine which, if any, of such differing and conflicting inferences is probably correct as against any and all other inferences, and may deem such probable inference so determined to be supported by the circumstantial evidence. If however, the jury considers that there is no reasonable inference which is probably correct as against any and all other reasonable inferences, then no inference may be treated as established by such evidence.
   In order that a claimant's theory or claim may be established by circumstantial evidence alone, the facts and circumstances which you find to have been established by the circumstantial evidence must make claimant's theory or claim reasonably probable as against any and all other theories or claims which may reasonably be deduced therefrom. The claimant has the burden of proving by a preponderance of probability his claim based on circumstantial evidence alone. If you find that claimant's theory or claim does not stand the test of being probably correct as against any and all other theories or claims, then claimant has not sustained the burden of proof as to his theory or claim based on circumstantial evidence alone.

situation where a plaintiff's claim or theory is based solely on circumstantial evidence. LDL alleges the optional paragraphs should not have been given as part of the instructions because its case was not based solely on circumstantial evidence. In the alternative, LDL asserts the use of the optional paragraph in both instructions was duplicative and unduly emphasized the issue.

[¶ 32] This Court reviews jury instructions as a whole and will find them erroneous only if they do not correctly state the law and fail to inform the jury. *Cody v. Edward D. Jones Co.*, 502 N.W.2d 558, 563 (S.D.1993). To set aside a civil verdict due to an erroneous instruction, prejudice must be established by the moving party. *Glanzer v. St. Joseph Indian School*, 438 N.W.2d 204, 209 (S.D.1989); *Cody*, 502 N.W.2d at 563; *Sommervold v. Grevlos*, 518 N.W.2d 733, 739 (S.D.1994).

[¶ 33] It is the trial court's duty to set forth instructions to the jury "as to the law of the case as it pertains to any theory of the parties supported by the evidence...." *Glanzer*, 438 N.W.2d at 209; *Cody*, 502 N.W.2d at 563; *Sommervold*, 518 N.W.2d at 739. LDL claims that its case presented at trial included direct evidence as well as circumstantial evidence. LDL argues that instructions 22 and 23 allow the jury to consider that LDL's claim was based solely on circumstantial evidence. There was no direct evidence as to the cause of the fire. LDL's theory that welding started the fire is in itself circumstantial, since there was no one witness who could definitively state that welding caused the fire. Nevertheless, the instructions as given did not prevent LDL from arguing to the jury that direct evidence had been presented at trial.

[¶ 34] Alternatively, LDL claims the double inclusion of the optional paragraph in both instructions unduly emphasized the issue of circumstantial evidence. This Court has previously determined "the mere fact instructions are somewhat duplicative or cumulative does not warrant a reversal of verdict." *Cody*, 502 N.W.2d at 564. The use of an "unnecessary" instruction does not rise to a level of prejudice if it represents a correct statement of the law and merely more thoroughly outlines the specifics of the

law. *Id.* The trial court ruled the first instruction was definitional and the second instruction detailed the application of the evidence. We agree with the trial court's ruling on this issue. Other courts have suggested it is preferable to give a circumstantial evidence instruction rather than to not give it when much of the trial evidence is circumstantial in nature and testimony is in sharp conflict. *Meshefski v. Shirnan Corp.*, 385 N.W.2d 474, 478 (N.D.1986).

[¶ 35] The moving party must also show "that under the evidence the jury might have, and probably would have, returned a different verdict if a correct instruction would have been given." *Id.* at 478. In the instance of additional instructions, or in this case, additional paragraphs in instructions, the moving party must demonstrate that the additional instruction or portion did in fact prejudice its case. *Cody*, 502 N.W.2d at 564. LDL has failed to meet its burden. Nowhere in its brief or in its objection did LDL mention prejudice, let alone demonstrate how its rights were prejudiced or that a different verdict would have been reached by the jury. Speculation that an issue has been "unduly emphasized" is simply not enough to meet the movant's burden as previously set forth by this Court. The failure to establish prejudice on the record is a failure of the moving party to meet its burden. *Id.* at 564. Therefore, the giving of instructions 22 and 23 did not rise to the level of being prejudicial to LDL's case.

[¶ 36] We find that the trial court correctly instructed the jury on the determination and use of direct and circumstantial evidence through jury instructions 22 and 23.

[¶ 37] We affirm the trial court's exclusion of evidence of insurance coverage and the submission of jury instructions 22 and 23. We reverse the order granting a new trial.

[¶ 38] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 39] LEE D. ANDERSON, Circuit Judge, for AMUNDSON, J., disqualified.