1997 SD 12

**Richard Troy ANDRESON, Plaintiff and Appellant,**

v.

**BLACK HILLS POWER & LIGHT COMPANY and Vance Crocker, Defendants and Appellees.**

No. 19372.

Supreme Court of South Dakota.

Argued Oct. 21, 1996.

Decided Feb. 19, 1997.

Rick Johnson of Johnson, Eklund, Nicholson & Dougherty, Gregory, for Plaintiff and Appellant.

John K. Nooney of Morrill, Thomas & Nooney, Rapid City, for Defendants and Appellees.

AMUNDSON, Justice.

[¶ 1] During his employment as a lineman by Brink Electric Company (Brink Elec.), Richard Troy Andreson (Andreson) suffered injuries after being pinned between his vehicle and a vehicle driven by an employee of Black Hills Power & Light (BHPL). The jury found that BHPL was not the principal contractor and awarded Andreson $35,000 via general verdict. Andreson appeals, and we affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2] In March of 1993, Andreson was employed as a lineman by Brink Elec. BHPL contracted with Brink Elec. for the construction of certain electric transmission lines as well as associated facilities and equipment. During the construction process, Andreson was injured after being hit by a vehicle driven by an employee of BHPL. Andreson was standing behind a parked vehicle in the road, adjusting the cargo, when the BHPL vehicle hit him, pinning him between the two vehicles. Andreson suffered injuries to his knees and legs as a result of the accident.

[¶ 3] Prior to the trial, BHPL admitted liability with regard to the accident. The remaining issues submitted to the jury included: (1) Whether BHPL was the principal contractor for the construction site and, if so, whether the injury occurred on the work site while Andreson was engaged in the subject matter of the contract; and (2) the amount of money that would reasonably and fairly compensate Andreson for any loss proximately caused by the employee's negligence.

[¶ 4] During the trial, evidence was heard regarding Andreson's medical expenditures, economic damages as they concern lost wages and/or earning capacity, and permanent disability. The jury found that BHPL was not acting as a principal contractor on the project and awarded Andreson $35,000. Andreson moved for a new trial, claiming the $35,000 award was inadequate and unsupported by the evidence. Andreson appeals the trial court's denial of his motion for a new trial, raising the following issues:

I.  Whether the jury's award of $35,000 is inadequate.

II. Whether counsel made a judicial admission during closing arguments.

III. Whether Andreson was required to separately lodge an objection when the trial court interrupted the proceedings to cure testimony concerning insurance by BHPL's witness.

## STANDARD OF REVIEW

[¶ 5] We review a denial of motion for new trial by the trial court applying the following standard:

"Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion. Finally, we note a decision to grant a new trial stands on firmer footing than a decision to deny a new trial."

*Schuldies v. Millar*, 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95 (quoting *Junge v. Jerzak*, 519 N.W.2d 29, 31 (S.D.1994) (citations omitted)); *see also State v. DeNoyer*, 541 N.W.2d 725, 733 (S.D.1995); *Bridge v. Karl's, Inc.*, 538 N.W.2d 521, 523 (S.D.1995).

## DECISION

### [¶ 6] I.  Inadequate Jury Award.

▇ [¶ 7] The jury awarded $35,000 via general verdict. Andreson contends that because the jury's verdict was inadequate, the trial court erred when it refused to grant a motion for new trial. The trial court found:

[T]he jury award is not inconsistent with the evidence presented at trial. It is highly likely that the jury awarded the Plaintiff damages equal to sum of the medical expenses incurred and lost wages. The evidence presented at trial would establish that past medical expenses were incurred in the amount of $14,500. In addition, there was evidence presented that the Plaintiff's lost wages for a six month period of time, immediately following the injury, totaled approximately $20,000. The total of these damages is consistent with the jury's verdict.

Although expert witnesses testified that damages, based on given assumptions, would exceed the amount actually awarded, the jury was not obligated to follow the experts' opinions. The jury would be justified in determining that the Plaintiff did not prove [by] a preponderance of the evidence that his damages exceeded the award. Viewed most favorably to the Defendants, the Court simply cannot justify the granting of a new trial on basis of an inadequate damages award.

▇ [¶ 8] In addition to the standard of review stated above, we note that "[a] new trial is not to be granted due to inadequacy of damages merely because a court believes a verdict is smaller than it should be." *Itzen v. Wilsey*, 440 N.W.2d 312, 313 (S.D.1989). Furthermore, plaintiffs suing for personal injury are not guaranteed the recovery of any predetermined amount of damages. *Itzen*, 440 N.W.2d at 314 (quoting *Gould v. Mans*, 82 S.D. 574, 577, 152 N.W.2d 92, 93 (1967)); *see also Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983). As to the review of a jury verdict, we stated in *Miller v. Hernandez*: "This Court is not free to reweigh the evidence or gauge the credibility of the witnesses. . . . If the jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed." 520 N.W.2d 266, 272 (S.D.1994) (citations omitted).

[¶ 9] Since a general verdict was given, mere speculation remains as to the categorization of damages. For example, Andreson offered evidence that $14,582.31 was expended in medical bills. Although this amount represents costs actually incurred by Andreson for hospital expenses and physical therapy, the jury may have concluded that much of the treatment was unnecessary after testing Andreson's credibility as well as other evidence. *See Freeman v. Berg*, 482 N.W.2d 32, 35 (S.D.1992) (noting the existence of evidence that medical bills were unreasonably incurred); *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D.1990) (emphasizing evidence that demonstrated the injury was not as substantial as plaintiff claimed). Support for this conclusion includes surveillance tapes identifying Andreson's extensive physical activities, testimony concerning Andreson's ability to jump over a fence, and testimony from a physical therapist who changed his assessment after viewing the surveillance tapes and ultimately determined that Andreson had abilities beyond those originally presented.[1]

---

1. Anthony Yurick, a physical therapist, testified as follows:

COUNSEL: What did their surveillance—how did the surveillance tapes help you or tell you? YURICK: Basically, what was shown on the tape was Mr. Andreson performing some golfing activities, mobility on his legs that was with much greater ease than what was demonstrated during the testing.

COUNSEL: Why was that of any significance to you? YURICK: Because typically, if people have those kinds of problems with—during testing, it would carry over into their own functional activities.

\* \* \*

COUNSEL: And after you had them, were they helpful?

[¶ 10] Andreson also introduced evidence as to his economic damages. His expert, Donald L. Frankenfeld (Frankenfeld), testified that Andreson's economic damages were $560,048. BHPL's expert, Ralph J. Brown (Brown), testified such damages were $20,414. It is possible the jury accepted Brown's lower appraisal, yet they are not bound to accept either of the experts' opinions. It is well established, and this jury was so instructed, that the jury is not obligated to accept an expert's opinion and may disregard the testimony if it desires. *State v. McCord,* 505 N.W.2d 388, 394 (S.D.1993) (citing *State v. Baker,* 440 N.W.2d 284, 287 (S.D.1989); *State v. Swallow,* 350 N.W.2d 606, 609 (S.D. 1984)).

[¶ 11] Andreson additionally claims that the trial court erred in not granting his motion for new trial after the jury failed to award any damages for pain and suffering. However, due to the general verdict, we are uninformed as to whether the jury actually awarded damages for pain and suffering. *See Bankwest, Inc. v. Valentine,* 451 N.W.2d 732, 736 (S.D.1990) (noting the difficulty of determining how the jury reached a verdict when a general verdict is used, and holding that when "a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied."). *See also Wang v. Wang,* 440 N.W.2d 740, 745 (S.D.1989); *Fjerstad v. Sioux Valley Hosp.,* 291 N.W.2d 786, 788 (S.D.1980). The record reveals only that the jury was instructed to consider Andreson's "pain, suffering and mental anguish" when determining the appropriate damage award.[2] There is no concrete evidence demonstrating pain and suffering were not considered by the jury in this case.

[¶ 12] The jury was also instructed to evaluate each witness' credibility. Among those

witnesses was Andreson, whose credibility was in fact questioned. Although he represented to the jury that he had been dismissed from his employment after a one-month leave, there was evidence in the record that Andreson made a unilateral decision to terminate his employment. Furthermore, when he left his employment, he was making more money than he had been prior to the time of his injury. There were also surveillance tapes identifying Andreson's true physical abilities. Considering these factors, the jury may have "disbelieved and rejected" some of Andreson's claims and "particularly those relying on his subjective testimony of pain and suffering." *Itzen,* 440 N.W.2d at 314; *see also Stoltz,* 336 N.W.2d at 658.

[¶ 13] In addition, the jury was given this instruction: "In fixing the amount of money which will reasonably and fairly compensate the plaintiff, you are instructed that an injured person must exercise reasonable care and diligence to avoid loss or to minimize the consequences of the injury." It is entirely possible the jury concluded Andreson failed to minimize the aftereffects of his injury. *See, e.g., Kusser,* 453 N.W.2d at 621–22.

[¶ 14] As we stated in *Kusser:* "The trial court is best able to judge whether the damages awarded by a jury are the product of passion or prejudice." *Id.* at 621. Keeping this in mind, we further note our holding in *Freeman:*

From reviewing the verdict form, there is no way for this court to know how the jury arrived at the $100,000 figure. "Mere assertions of what the jury may have concluded are insufficient" to show prejudice. *Duncan v. Pennington County H.A.,* 283 N.W.2d 546, 553 (S.D.1979); *Dwyer v. Christensen,* 77 S.D. 381, 92 N.W.2d 199 (1958). "Under such circumstances we

---

YURICK: It—it certainly put things in a different perspective in terms of a performance pace during the testing versus what was demonstrated on the tape, yes.

We further note that the jury was instructed to determine whether the damages claimed by Andreson were the proximate result of the accident. This testimony certainly could have been considered by the jury when assessing such damages.

2. The instruction stated:
[Y]ou must then fix the amount of money which will reasonably and fairly compensate

him for any of the following elements of loss or harm suffered in person or property *proved by the evidence* to have been proximately caused by the negligence of the Defendants ... namely:

\* \* \*

4. The pain, suffering and mental anguish experienced and reasonably certain to be experienced in the future *as a result of the injury....* (Emphasis added.)

have indicated that if a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied." *Bankwest, Inc. v. Valentine*, 451 N.W.2d 732, 736 (S.D.1990); *Fjerstad v. Sioux Valley Hospital*, 291 N.W.2d 786, 788 (S.D.1980); *Baker v. Jewell*, 77 S.D. 573, 580, 96 N.W.2d 299, 304 (1959).

482 N.W.2d at 35. Since there is evidence supporting the verdict, we hold that a "judicial mind, in view of the law and the circumstances" in this case, could reasonably deny a motion for new trial. *Schuldies*, 1996 SD 120, at ¶ 8, 555 N.W.2d at 95. Therefore, the trial court did not abuse its discretion.

### [¶ 15] II. Judicial Admissions in Closing Argument.

■ [¶ 16] Andreson asserts that portions of BHPL's closing argument constitute judicial admissions. However, this issue was not preserved for appeal. Andreson failed to respond to BHPL's statements during closing arguments and failed to include the argument in his motion for new trial following the closing argument. Therefore, the trial court had no opportunity to rule on the issue. As we stated in *State v. Handy*, in order to "properly preserve the issue for appeal[,]" one must "make a timely or appropriate objection[.]" 450 N.W.2d 434, 435 (S.D.1990); *see also State v. Wall*, 481 N.W.2d 259, 265 (S.D.1992) (citing *State v. Red Star*, 467 N.W.2d 769, 771 (S.D.1991); *State v. Gallipo*, 460 N.W.2d 739, 743 (S.D.1990)). The issue is therefore deemed waived.

### [¶ 17] III. Failure to Object to Certain Testimony.

■ [¶ 18] Andreson asserts that BHPL's witness, Jay Brink (Brink), injected the issue of insurance into his testimony, thereby prejudicing Andreson. The trial court previously prohibited any reference to insurance by either party.

■ [¶ 19] It is well established in South Dakota that " 'evidence, received without objection, is available to the trier of fact....' " *Bakker v. Irvine*, 519 N.W.2d 41, 46 (S.D.1994) (quoting *Killian v. Hubbard*, 69 S.D. 289, 295, 9 N.W.2d 700, 703 (1943)).

"If when inadmissible evidence is offered the party against whom such evidence is offered consents to its introduction, or fails to object, or to insist upon a ruling on an objection to the introduction of such evidence, and otherwise fails to raise the question as to its admissibility, he is considered to have waived whatever objection he may have had thereto, and the evidence is in the record for consideration the same as other evidence."

*Id.* at 46–47 (quoting *In re Interest of E.G.*, 240 Neb. 373, 482 N.W.2d 17, 22 (1992) (citations omitted)). Furthermore, an objection must be made in a timely fashion and must state the proper ground(s). *Id.* at 47. "An objection is not considered timely unless it is made as soon as the party objecting knows or reasonably should have known that the evidence is objectionable." *Id.* In other words, the objection must be made at the earliest opportunity.

[¶ 20] Brink, Andreson's employer at the time of the accident, testified concerning a job analysis form. After he was questioned regarding the purpose for the form, Brink responded that the rehabilitation nurse and the insurance carrier needed the form in order to analyze Andreson's ability to work. Andreson failed to object to Brink's testimony on this issue.

[¶ 21] While Brink remained on the stand, a discussion of Andreson's job descriptions arose once again in which Brink testified that the job descriptions were done at the request of the rehabilitation nurse and the insurance company. The trial court then interrupted Brink, excused the jurors, and instructed him to refrain from referring to insurance. Again, there was no objection from Andreson as to Brink's testimony concerning insurance.

[¶ 22] Having "failed to make a timely and appropriate objection at the time of the alleged error[,]" Andreson did not properly preserve the issue for appeal. *See State v. Spiry*, 1996 SD 14, ¶ 15, 543 N.W.2d 260, 263. Furthermore, Andreson could have made a motion to strike the evidence, made a motion for a mistrial, or offered a curative instruction on the issue of insurance. *See, e.g., Lowe v. Steele Constr. Co.*, 368 N.W.2d 610, 611 (S.D.1985) (noting counsel made a motion for mistrial after references were made regarding insurance in the jury's presence).

The record reflects that Andreson merely made an untimely motion for new trial. *See Peterson v. First Nat'l Bank of Iowa*, 392 N.W.2d 158, 163 (Iowa.Ct.App.1986) (holding that objections first raised in a motion for new trial are too late to be considered on appeal when objections should have been made in time to allow the taking of corrective action). Andreson therefore waives review on appeal. Even assuming proper preservation existed, there is no prejudice because the trial court intervened, excused the jury, and instructed Brink to refrain from referring to insurance.

[¶ 23] Andreson further argues that BHPL's counsel intentionally and willfully elicited prejudicial testimony concerning insurance. This issue is also waived because Andreson failed to make an objection at the time of the alleged misconduct. *Handy*, 450 N.W.2d at 435. In any event, the record reveals that counsel was merely inquiring as to the purpose of the job descriptions, which was to assess Andreson's ability to return to work. Such information was necessary for the jury to adequately determine damages.

[¶ 24] We affirm.

[¶ 25] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

