1997 SD 110

**Robert SPORLEDER, Plaintiff
and Appellee,**

v.

**Merle VAN LIERE and EN–R–G Max,
Inc., Defendants and Appellants.**

**No. 19309.**

Supreme Court of South Dakota.

Argued Dec. 3, 1996.

Decided Sept. 3, 1997.

Rehearing Denied Oct. 9, 1997.

Gale E. Fisher, Sioux Falls, for plaintiff and appellee.

Michael J. Schaffer and Cheryle Wiedmeier of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellants.

AMUNDSON, Justice.

[¶ 1] Robert Sporleder (Sporleder) brought a cause of action against Merle Van Liere and En–R–G Max, Inc. (collectively referred to as Van Liere), claiming implied contract, unjust enrichment, breach of fiduciary duty, and fraud and deceit. The claims of unjust enrichment, breach of fiduciary duty, and fraud and deceit were submitted to the jury, while the court directed a verdict on the

implied contract claim. The jury returned a verdict in favor of Sporleder for $320,000 in compensatory damages and $100,000 in punitive damages.[1]

[¶ 2] We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 3] This dispute arose out of an alleged joint venture between Sporleder and Van Liere, involving the development and manufacture of tub feed supplements. Both men have dealt extensively with feed supplements. Sporleder earned an associate's degree in applied science in animal nutrition and soil sciences. He then became a feed dealer for a company called TCI, selling livestock feed products. In 1988, he began his employment with Winner Circle Feeds (WCF). Throughout his career, he researched different feed products.

[¶ 4] Van Liere is a farmer who began selling feed products for Ralston Purina Company in order to supplement his farm income. In 1967, he and his father built a feed mill, Colton Feed Service (CFS), which housed the only steam flaking system in South Dakota. By 1976, Van Liere bought his father out and incorporated the business with his wife.

[¶ 5] Van Liere and Sporleder became acquainted through Sporleder's employment with WCF, a wholesaler that purchased feed products from CFS. WCF eventually fell into financial trouble and owed CFS about $13,000. Although CFS refused to extend additional credit to WCF, Van Liere agreed to sell feed to some of WCF's customers directly. Van Liere allowed Sporleder to sell CFS products on a commission basis.

[¶ 6] During this time, both parties apparently continued researching the development of tub feed products. In May of 1989, Sporleder and Van Liere agreed to work together to produce a marketable feed product. Sporleder claims they agreed to form a joint venture, with Sporleder starting out with a ten-percent ownership of the company, with an option to buy up to one-third, or an additional twenty-three and one-third. Van Liere maintains he hired Sporleder on a commission basis, paying Sporleder $7.00 per ton sold. No written contract was signed by the parties.

[¶ 7] Agreeing that they needed better equipment, Sporleder and Van Liere worked together to design a new factory. Although they disagree as to each person's contribution, a factory was built, including a filling and pressing station. Equipment was either purchased or built, including a prototype hydraulic press and a tub washer.

[¶ 8] Both Sporleder and Van Liere submitted evidence regarding their contribution toward building the plant. Essentially, Van Liere claims he was the general contractor and Sporleder was the plant manager who assisted Van Liere with various tasks. Sporleder, on the other hand, contends he was instrumental in designing and building the plant as well as the equipment.

[¶ 9] In June of 1989, Van Liere and his wife formed En–R–G Max, Inc. with fifty-one percent and forty-nine percent ownership, respectively. Sporleder claims this was the first time he learned that he had no ownership interest in the company. Various discussions ensued and Sporleder left the company in 1991. He then brought a cause of action against Van Liere, claiming implied contract, unjust enrichment, breach of fiduciary duty, and fraud and deceit. The claims of unjust enrichment, breach of fiduciary duty, and fraud and deceit were submitted to the jury, while the court directed a verdict against Sporleder on his implied contract claim. The jury returned a verdict in favor of Sporleder for $320,000 in compensatory damages and $100,000 in punitive damages.

[¶ 10] Van Liere appeals, raising the following issues:

I. Whether the verdict is inconsistent.

II. Whether there is sufficient evidence to support a finding of fraud and deceit.

III. Whether there is sufficient evidence to support a finding of unjust enrichment.

---

1. This cause of action was consolidated for trial with Weins v. Sporleder, Van Liere, & En–R–G, Max, Inc., involving a claim for misappropriation of a trade secret.

IV. Whether there is sufficient evidence to support a finding of joint venture.

V. Whether there is sufficient evidence to support a finding of breach of a fiduciary duty.

VI. Whether the trial court improperly instructed the jury.

VII. Whether the damages awarded by the jury are supported by the evidence, are contrary to the law, or are the result of passion and prejudice.

VIII. Whether the court made improper evidentiary rulings.

IX. Whether the jury improperly found against En–R–G Max, Inc. as to the counterclaims against Sporleder.

X. Whether the award of costs should be reversed.

### DECISION

### Inconsistent Verdicts

[¶ 11] Due to our holding in *Weins v. Sporleder, Van Liere, & En–R–G Max, Inc.*, 1997 SD 111, 569 N.W.2d 16, we need not address this issue.

### Fraud and Deceit

▬ [¶ 12] Van Liere argues that because there was insufficient evidence to support a finding of fraud and deceit, the trial court erred in denying motions for directed verdict and judgment notwithstanding the verdict. The standard of review this Court applies in such situations is clearly set forth in *Olson v. Judd*:

"In reviewing [a] contention that the trial court erred in failing to grant a directed verdict, we view the evidence in a light that is most favorable to the non-moving party and give that party the benefit of all reasonable inferences that fairly can be drawn from the evidence. When viewed in this light, if there is any substantial evidence to sustain the cause of action or defense, it must be submitted to the finder of fact. 'If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate.' *Sabag v. Continental South Dakota*, 374 N.W.2d 349, 355 (S.D.1985)."

534 N.W.2d 850, 852 (S.D.1995) (quoting *Weiszhaar Farms, Inc. v. Tobin*, 522 N.W.2d 484 (S.D.1994) (citation omitted)); *see also LBM, Inc. v. Rushmore State Bank*, 1996 SD 12, ¶ 18, 543 N.W.2d 780, 783 (citation omitted). The same standard is applied when reviewing a motion for judgment notwithstanding the verdict. *Olson*, 534 N.W.2d at 852.

▬ [¶ 13] We therefore determine whether substantial evidence exists to sustain Sporleder's action for fraud and deceit. SDCL 53–4–5(4) defines actual fraud as "a promise made without any intention of performing it[.]" Deceit is defined as "a promise made without any intention of performing." SDCL 20–10–2(4). This same phrase is included in Jury Instruction 30, in addition to language similar to other subsections of both SDCL 53–4–5 and 20–10–2.[2] Therefore, the jury was properly instructed on the elements of fraud and deceit, and applying these elements to the facts is typically the jury's responsibility. For example, this Court addressed the issue of deceit in *Moss v. Guttormson*, and stated: " 'Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury.' " 1996 SD 76, ¶ 7, 551 N.W.2d 14, 16 (quoting *Laber v. Koch*, 383 N.W.2d 490, 492 (S.D.1986) (citations omitted)). *See also Piner v. Jensen*, 519 N.W.2d 337, 339 (S.D. 1994) (stating, "Claims of fraud and deceit are usually jury questions.").

---

**2.** Jury Instruction 30 states:

The elements of an action for fraud and deceit consists [sic] of any of the following acts committed by a party or with his connivance, with intent to deceive another:

1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4) A promise made without any intention of performing.

[¶ 14] It is also the jury's duty to test the credibility of the witnesses. *LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22, ¶ 20, 544 N.W.2d 523, 528. Sporleder testified that Van Liere promised to pay Sporleder a royalty of ten percent of the net profits, later changed to $7.00 per ton, together with a ten-percent ownership in the corporation. Sporleder also testified he possessed an option to buy twenty-three and one-third percent. Later, Sporleder was informed Van Liere actually owned fifty-one percent of the business, and Van Liere's wife owned the remaining forty-nine percent. Van Liere also backed out of various financing arrangements he had been negotiating with other investors. From this evidence, the jury must have concluded Van Liere never intended to keep his promise to allow Sporleder an ownership interest in the corporation. This conclusion is a fair inference from the evidence presented. *See Olson*, 534 N.W.2d at 852 (stating the nonmoving party must receive the "benefit of all reasonable inferences that can fairly be drawn from the evidence."); *LBM, Inc.*, 1996 SD 12, at ¶ 18, 543 N.W.2d at 783 (stating the prevailing party must receive "the benefit of every inference"). The jury's finding that there was a promise and that Van Liere never meant to keep the promise is enough to sustain a verdict for fraud and deceit in this case.

## Unjust Enrichment

[¶ 15] Van Liere asserts there was insufficient evidence to support a finding of unjust enrichment, specifically claiming that Van Liere received an unjust benefit. We again apply the standard of review set forth above. *Olson*, 534 N.W.2d at 852.

[¶ 16] The jury was instructed that "[i]n order to recover for unjust enrichment, the party making the claim must prove another party against whom the claim is made has received a benefit, and that retention of that benefit would be unjust." This instruction is similar to this Court's description of the basis for unjust enrichment in *Randall Stanley Architects, Inc. v. All Saints Community Corp.*: "When a party confers a benefit upon another party who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying[.]" 1996 SD 138, ¶ 20, 555 N.W.2d 802, 805 (quoting *Amert Constr. Co. v. Spielman*, 331 N.W.2d 307, 310 (S.D.1983)).

[¶ 17] The following evidence supports Sporleder's claim for unjust enrichment: per their alleged agreement, Sporleder was to receive royalties of $7.00 per ton over seventeen years; En–R–G Max, Inc. sold over 20,000 tons over the past six years, or 3,300 tons per year on average; rather than pay Sporleder his due share, Van Liere sought to retain the profits for himself; although Sporleder performed numerous functions for the company, he never received his expected ownership interest. The jury tested Sporleder's credibility and believed his testimony. *LDL Cattle Co.*, 1996 SD 22, at ¶ 20, 544 N.W.2d at 528. Based on Sporleder's testimony, we hold there is competent and substantial evidence to support the jury verdict.

## Joint Venture

[¶ 18] Van Liere also claims there was insufficient evidence supporting the first three elements of joint venture, which are: 1) An intent to enter into a joint venture; 2) an agreement, express or implied, among members of a group; and 3) a common purpose to be carried out by the group.[3] Van Liere maintains he simply agreed to compensate

---

3. The remaining elements for joint venture in the jury instruction include: 4) a joint pecuniary interest in that purpose; 5) an equal right to a voice in the direction and control of the group; and 6) a right to share in the profits and a duty to share in any losses. In total, this instruction resembles those described in *Ethan Dairy Prods. v. Austin*, wherein we stated:

"Certain requisite elements of the relation have been recognized by the courts, including intent to enter into a joint venture, community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained ... and usually all of these elements must be present for a joint venture to exist; but no one of the elements essential to the creation of a joint venture is alone sufficient to establish such."

448 N.W.2d 226, 228 (S.D.1989) (quoting 48A CJS *Joint Ventures* § 10 (1981)).

Sporleder at a rate of $7.00 per ton for his work as plant manager.

[¶ 19] Once again, we review a sufficiency of the evidence in a light most favorable to Sporleder, and determine whether there is competent and sufficient evidence to support the jury's decision. *Olson*, 534 N.W.2d at 852. Sporleder testified in support of the joint venture claim, stating he and Van Liere agreed to enter into a joint venture for the purpose of developing a feed supplement. Sporleder was responsible for research and development of the product, while Van Liere was to provide the funding for supplies, ingredients, inventory, and financing. On the contrary, Van Liere testified Sporleder was simply an employee. Since it is the jury's responsibility to weigh credibility, we give deference to its determination. *LDL Cattle Co.*, 1996 SD 22, at ¶ 20, 544 N.W.2d at 528. There is sufficient evidence to support the existence of a joint venture.

### Fiduciary Duty

[¶ 20] Van Liere claims there was also insufficient evidence to support the finding of breach of a fiduciary duty. The jury was given two instructions relating to this issue. The first one, Instruction 27, states that in order for a duty to arise to disclose material facts, there must be some special relationship between the parties, such as a fiduciary or confidential relationship. The instruction also defines a fiduciary relationship to exist "whenever under the circumstances trust and confidence reasonably may be and is reposed by one person in the integrity and fidelity of another."[4] The second instruction elaborates on a fiduciary relationship, stating:

> Fiduciary duties are not inherent in normal arm's length business relationships, and arise only when one undertakes to act primarily for another's benefit. One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party. There must be additional circumstances, or a relationship that induces the trusting party to relax the care

and vigilance which he would ordinarily exercise for his own benefit. A fiduciary is in a position to have and exercise, and does have and exercise influence over another.

This instruction set forth the law as described in *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 500 (S.D.1990); *High Plains Genetics Research, Inc. v. J K Mill–Iron Ranch*, 535 N.W.2d 839, 842 (S.D.1995). Further, *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 838 (S.D.1990), provides guidance on the issue of fiduciary relationships. In addition to requiring " 'confidence of one in the other,' " there must be " 'a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, *giving to one advantage over the other.' " Id.* (quoting *Yuster v. Keefe*, 46 Ind. App. 460, 90 N.E. 920 (1910) (emphasis in original)).

[¶ 21] It is clear there is sufficient evidence to support the existence of a fiduciary relationship in this case. The jury heard testimony emphasizing that Van Liere controlled the money in the business (therefore having more "knowledge of the facts involved"), while Sporleder trusted he would receive a royalty and obtain ownership as long as he continued meeting his obligations. Furthermore, evidence revealed that Van Liere is an intelligent business person who could easily intimidate Sporleder (demonstrating Van Liere's superior mental strength). Sporleder also testified he had confidence in Van Liere, reinforced by Van Liere's repeated assurances that he would take care of Sporleder and treat him "like a brother."

[¶ 22] An arm's length business relationship did not exist in this case. Although Sporleder understands the development of feed supplements, he lacks the business intelligence necessary to protect his interests. Van Liere, on the other hand, has owned a business since 1976 and possesses extensive business knowledge. The evidence demonstrates Van Liere applied his business intelligence to Sporleder's detriment. Unlike *High Plains Genetics Research*, Van Liere

---

4. The full text of this jury instruction is provided in the Jury Instructions section, ¶ 23, *infra.*

clearly "exerted dominance and influence over [Sporleder]." 535 N.W.2d at 842. The jury agreed Van Liere exercised influence over Sporleder in their business relationship after viewing the witnesses' demeanor and testing their credibility. There is sufficient evidence to support the jury's finding of breach of a fiduciary duty by Van Liere.

### Jury Instructions

[¶ 23] Van Liere argues the trial court erred in submitting Jury Instruction 27, claiming it is a misstatement of the law. The instruction reads,

> Except as you may otherwise be instructed, where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts.
>
> A duty to disclose known facts arises where the party having knowledge of the facts is in a fiduciary or a confidential relationship.
>
> A fiduciary or a confidential relationship exists whenever under the circumstances trust and confidence reasonably may be and is reposed by one person in the integrity and fidelity of another.

Van Liere claims the error is found in the third and last paragraph. He points to *High Plains Genetics Research*, which states, " 'One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party.' " 535 N.W.2d at 842 (quoting *Ainsworth v. First Bank of South Dakota*, 472 N.W.2d 786, 788 (S.D.1991)). However, the jury instruction does not refer solely to the requirement of trust and confidence. Rather, it mentions such trust and confidence must be "reposed by one person in the integrity and fidelity of another." In addition, we review this jury instruction along with all of the other instructions as a whole. *Herren v. Gantvoort*, 454 N.W.2d 539, 542 (S.D.1990). The jury also received Instruction 27A, which further expands the definition of fiduciary duties.[5] Instruction 27A was actually proposed by Van Liere, and

he admits it includes relevant South Dakota law. As stated in *Cody v. Edward D. Jones & Co.* "We review the jury instructions as a whole and will not find them erroneous if they correctly state the law and inform the jury." 502 N.W.2d 558, 563 (S.D.1993). In addition, one jury instruction which "merely more thoroughly outlines" certain obligations than does another jury instruction does not prejudice the defense. *Id.* at 564.

[¶ 24] Furthermore, Van Liere possesses the burden of showing the instruction was prejudicial. *Id.* at 563. In his brief to this Court, Van Liere states, "the jury might have, and probably would have, returned a different verdict if the instruction had not been given." This is insufficient according to *Cody*, which provides Van Liere "has the duty of proving that the additional jury instruction *did in fact work a prejudice on it.*" *Id.* at 564 (citing *Runge v. Prairie States Ins. of Sioux Falls*, 393 N.W.2d 538, 541 (S.D. 1986) (emphasis added)). Therefore, Van Liere suffered no prejudice, which is required in order to set aside a verdict due to an erroneous instruction.

[¶ 25] Van Liere also objects to Instructions 14, 27A, 29, 30, 31, 33, 34, 35, 36, and 37. We will not address these arguments on the merits due to Van Liere's failure to cite authority regarding these instructions, thereby waiving the issue. *State v. Phillips*, 489 N.W.2d 613, 616 (S.D.1992).

### Damages

[¶ 26] It is argued by Van Liere that damages awarded by the jury are not supported by the evidence, are contrary to law, and are the result of passion and prejudice. He claims the trial court therefore erred in denying motions for directed verdict and judgment notwithstanding the verdict. The standard of review applied to the trial court's decision regarding a directed verdict and judgment notwithstanding the verdict was set forth above.

[¶ 27] As this Court stated in *Bakker v. Irvine*, "The jury's damage award cannot be overturned unless it 'is so extremely excessive [or inadequate] as to justify the inference or conclusion that it is the product

---

5. The full text of this instruction is provided in the Fiduciary Duty section, ¶ 20, *supra*.

of corruption, passion or prejudice.'" 519 N.W.2d 41, 48 (S.D.1994) (quoting *Nebraska Elec. Generation & Transmission Co-op. v. Tinant*, 90 S.D. 284, 292, 241 N.W.2d 134, 138 (1976)) (other citations omitted). Thus, the verdict will not be set aside unless it is "clearly 'unreasonable, arbitrary and unsupported by the evidence.'" *Id.* at 49 (quoting *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D. 1990)) (other citations omitted). Further, this Court cannot "'reweigh the evidence or gauge the credibility of the witnesses'" when reviewing the jury's verdict. *Andreson v. Black Hills Power & Light Co.*, 1997 SD 12, ¶ 8, 559 N.W.2d 886, 888 (1997) (quoting *Miller v. Hernandez*, 520 N.W.2d 266, 272 (S.D. 1994)).

[¶ 28] The verdict form reveals only that the jury found in favor of Sporleder on his claims for breach of fiduciary duty, unjust enrichment, and fraud and deceit, and awarded $320,000 for all three combined, leaving us to speculate what amount of the $320,000 was attributed to each claim.

[¶ 29] The jury heard a great deal of testimony regarding damages in this case. Ordinarily it is the jury's duty to determine the amount of loss, as it is a question of fact. *Keegan v. First Bank of Sioux Falls*, 470 N.W.2d 621, 624 (S.D.1991). Concerning compensatory damages, the jury heard testimony that a royalty of $7.00 per ton (which, according to Sporleder, was promised by Van Liere) would amount to $254,000 of lost revenue to Sporleder during the remaining eleven years. The jury also heard testimony regarding the value of En–R–G Max, Inc., which is relevant due to Sporleder's claim that he was entitled to a ten-percent ownership interest in the company. Weins' expert, Thomas Vogel (Vogel), valued En–R–G Max, Inc., at $986,000, while Van Liere's expert valued the company at

$231,000. Further, an internal balance sheet listed En–R–G Max, Inc.'s net worth as $4,793,186.51,[6] and a prospectus included a net profit projection of $5,876,330.[7]

[¶ 30] We addressed a similar situation involving the amount of damages awarded by a jury in *Andreson*, 1997 SD 12, at ¶ 14, 559 N.W.2d at 889, noting the trial court is in a better position to assess whether the amount of damages awarded was the result of passion or prejudice. In addition, we reiterated the following:

"From reviewing the verdict form, there is no way for this court to know how the jury arrived at the $100,000 figure. 'Mere assertions of what the jury may have concluded are insufficient' to show prejudice. *Duncan v. Pennington County H.A.*, 283 N.W.2d 546, 553 (S.D.1979); Dwyer v. Christensen, 77 S.D. 381, 385, 92 N.W.2d 199, 202 (1958). 'Under such circumstances we have indicated that if a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied.' *Bankwest, Inc. v. Valentine*, 451 N.W.2d 732, 736 (S.D. 1990); *Fjerstad v. Sioux Valley Hospital*, 291 N.W.2d 786, 788 (S.D.1980); *Baker v. Jewell*, 77 S.D. 573, 580, 96 N.W.2d 299, 304 (1959)."

*Id.* at 889–90 (quoting *Freeman v. Berg*, 482 N.W.2d 32, 35 (S.D.1992)). As in *Andreson*, there is evidence supporting the verdict in this case.

[¶ 31] The jury further awarded $100,000 in punitive damages to Sporleder. Van Liere argues that, since there is no showing of willfulness or maliciousness, these damages are not warranted. The trial court allowed punitive damages because there was sufficient evidence of fraud. According to SDCL 21–3–2,[8] when the defendant is found

---

6. The balance sheet was prepared by En–R–G Max, Inc. on October 31, 1990, and was given to Francis McKiernan who is in the financing business.

7. The preliminary prospectus was prepared by En–R–G Max, Inc., in May of 1990. The prospectus covers a five-year period, and lists $5,876,330 as the net profit to the company based on a projection table. Such information is typically compiled for the purpose of attracting investors and/or lenders.

8. SDCL 21–3–2 reads:

In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

guilty of fraud, the jury can award punitive damages. *See, e.g., Brandriet v. Norwest Bank,* 499 N.W.2d 613, 618 (S.D.1993) (holding that once fraud is shown, there is a basis to believe there has been willful, wanton or malicious conduct). Therefore, punitive damages were properly awarded in this case.

[¶ 32] We considered the remaining issues and find them without merit. We affirm.

MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

