Ben EBERLE, d/b/a B. & E. Refrigeration & Air Conditioning, Plaintiff and Respondent,

v.

SIOUXLAND PACKING COMPANY, INC., Defendant and Appellant.

No. 12240.

Supreme Court of South Dakota.

Argued March 14, 1978.

Decided May 25, 1978.

Thomas W. Parliman of Parliman & Parliman, Sioux Falls, for plaintiff and respondent.

Robert C. Heege of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

DUNN, Chief Justice.

This is a contract action seeking reimbursement for labor and materials provided by the plaintiff while attempting to set up a refrigeration system for the defendant. The defendant counterclaimed for damages allegedly caused by the plaintiff's poor workmanship and failure to fulfill his contract obligation. A six-person jury from the Second Judicial Circuit awarded the plaintiff his requested damages of $3,273.16 and denied the defendant's counterclaim. The defendant has appealed, raising issues as to the instructions on implied contracts and warranties and claiming that a fraud was perpetrated on the court. We affirm.

The plaintiff has been in part-time business as B. & E. Refrigeration & Air Conditioning for nearly thirty years. He also has a full-time job at the Western Mall, so his refrigeration work is done on off hours. In May of 1973, he was contacted by R. Q. Line, sole owner and stockholder of Siouxland Packing, Inc., with regard to installing a refrigeration system at Siouxland's packing plant. He was supposed to do two jobs—change the cooling system so that one Copeland twin compressor would cool all five cooling rooms instead of each room having its own compressor and install a refrigeration system in a retail meat market which was relocated to the plant shortly after the plaintiff started work. According to plaintiff, Mr. Line was aware that plaintiff worked at another job and that the installation would have to be done over a period of time. Mr. Line denied that he was aware of plaintiff's full-time job when he hired him.

The agreement between the parties was verbal, and no testimony was presented at trial regarding an agreement as to the amount of money the plaintiff would receive, the time of completion, or anything else other than the work to be done. Plaintiff started work in May of 1973, and the installation of the retail meat market was satisfactorily done. It was the installation of the Copeland compressor that was the basis for this suit. Throughout the summer, the compressor repeatedly broke down, causing meat spoilage and other damages to Siouxland. Plaintiff tried to fix the problem several times and finally located some faulty wiring that affected the lubrication system. This wiring had been done by the

manufacturer, and the compressor had been purchased second-hand by Siouxland. Correction of the faulty wiring did not completely solve the problem, and a connecting rod went out in the compressor. This was discovered by plaintiff on September 24, 1973. He explained the problem to Mr. Line and ordered the repair part from a Copeland distributor, requesting shipment directly to Siouxland. According to plaintiff, Mr. Line was supposed to contact him when the part came in. Mr. Line never contacted him, and September 24th was the last day plaintiff worked at Siouxland. Four days later, Mr. Line hired someone else to repair the compressor.

Mr. Line's version of what happened during the summer of 1973 differs in several respects. He testified that he had great difficulty getting plaintiff to come to work on the unit and even had trouble locating him to inform him that the compressor had broken down again. He denied the story about the rod being ordered and stated that plaintiff simply walked off the job on September 24th without saying anything, left his tools behind and never returned.

Plaintiff commenced suit to recover for his materials and labor, and the defendant counterclaimed for meat spoilage, cost of hiring someone else to repair the compressor and other damages. At trial, the plaintiff presented testimony of his wife in addition to his own testimony. The defendant presented testimony of two of Siouxland's employees, Mr. Line, and the man who finally repaired the compressor. On rebuttal, the plaintiff testified that he had checked the serial numbers on the compressor and found that it was ten to fifteen years old. After the verdict had been handed down, the defendant claims to have checked the compressor and found out from the manufacturer that it in fact was manufactured in 1970 and alleges that a deliberate fraud was perpetrated upon the court by the plaintiff. The defendant filed an affidavit from Mr. Line stating that a juror had informed him that the reason for the verdict was the testimony that the compressor was ten to fifteen years old. A motion for new trial was made based upon this affidavit and denied by the trial court.

■ The first point of alleged error raised by the defendant relates to the instructions on implied contracts. The jury was instructed that contracts are either express or implied, and that if no express contract existed, then any right to recover must be shown by an implied contract. The defendant argues that an express contract existed between the parties and that the jury should have only been instructed on the elements of that express contract without any mention being made of implied contracts. This court has repeatedly stated that, in a civil case, if a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory. *Aschoff v. Mobil Oil Corp.,* 1977, S.D., 261 N.W.2d 120; *Baker v. Jewell,* 1959, 77 S.D. 573, 96 N.W.2d 299; *Allen v. McLain,* 1955, 75 S.D. 520, 69 N.W.2d 390. Since there were instructions given on both express and implied contracts and the defendant did not propose any instructions, we conclude that even if the implied contract instructions were error, the giving of them was not reversible error.

■ On a related issue, the defendant contends that making the compressor run in a satisfactory manner was a condition precedent to recovery of damages. According to the defendant, no duty arose to pay plaintiff until such time as the compressor was put in good working order. The plaintiff's excuse for his failure to complete the work was the existence of latent defects in the compressor and the fact that Mr. Line called in someone else to finish the job. The jury was presented with conflicting evidence as to who was responsible for the breach of the contract and decided that issue of fact in the plaintiff's favor. There was sufficient evidence to support this determination, and we will not disturb that finding on appeal. *Vander Vorste v. Northwestern National Bank,* 1965, 81 S.D. 566, 138 N.W.2d 411, 20 A.L.R.3rd 960.

■ The defendant next challenges the instruction given on implied warranty. The instruction reads as follows:

"One of the elements of providing services and materials may be an affirmation that the work be done in a good and workmanlike manner. Such an affirmation of fact or promise is called a warranty. It may be made expressly in so many words or it may be implied from the circumstances."

The next instruction went on to state the measure of damages for breach of warranty. Again, the defendant proposed no instruction but did object, claiming that the instruction "does not advise the jury that the plaintiff by virtue of the law of this State not only affirms that he will do work in a good workmanlike manner, but that he will achieve the results that he promised at the time he entered into his agreement * * *." The defendant relies on this court's opinions in *Waggoner v. Midwestern Development, Inc.*, 1967, 83 S.D. 57, 154 N.W.2d 803, and *Fulwider v. Flynn*, 1976, S.D., 243 N.W.2d 170, in his argument to this court, but defendant did not point these cases out to the circuit court nor propose any instructions reflecting the law stated therein. The jury was squarely presented with the issue of whether the work was done in a good and workmanlike manner, and it resolved the issue in the plaintiff's favor. In light of this and since the defendant failed to propose any further instructions, we conclude that no reversible error occurred from the giving of the challenged instruction. *Ross v. Foss*, 1958, 77 S.D. 358, 92 N.W.2d 147.

Finally, the defendant contends that the misrepresentation of the age of the compressor in plaintiff's rebuttal testimony constituted a fraud upon the court and required a new trial based upon newly discovered evidence. It is settled law that a motion for a new trial is addressed to the discretion of the trial court, and its discretion will not be disturbed on appeal unless it appears affirmatively from the record that there has been an abuse of discretion. *Byre v. Wieczorek*, 1974, S.D., 217 N.W.2d 151; *Basin Electric Power Cooperative v. Gosch*, 1976, S.D., 240 N.W.2d 96. The statements in the affidavit of Mr. Line consist entirely of hearsay statements from the manufacturer and a juror. Applications for new trials on the ground of newly discovered evidence are looked upon with distrust and disfavor. *Piper v. Barber Transportation Co.*, 1961, 79 S.D. 353, 112 N.W.2d 329; *Fetzer v. Aberdeen Clinic*, 1925, 48 S.D. 308, 204 N.W. 364. This rule, when combined with the fact that the affidavit contains only hearsay and the fact that the compressor was in the possession of the defendant throughout the course of this lawsuit, convinces us that the trial court did not abuse its discretion in refusing to grant the motion for a new trial. *Wieland v. Loon*, 1962, 79 S.D. 608, 116 N.W.2d 391; *Styke v. Sioux Falls Motor Co.*, 1932, 60 S.D. 358, 244 N.W. 387.

In summary, our reading of the record convinces us that the jury was confronted with the issues of the quality of the plaintiff's workmanship and who was to blame for the plaintiff's failure to complete the work. It resolved these issues in the plaintiff's favor, and we find nothing in the record that requires a reversal of that decision.

The judgment is affirmed.

All the Justices concur.