#24762, #24775-a-JKK

**2008 SD 75**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CORRINNA KAY WALDNER,                    Plaintiff and Appellant,

    v.

BETH ANN BERGLUND,                       Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

RONALD C. AHO                            Attorney for plaintiff
Brookings, South Dakota                  and appellant.

MARK D. O'LEARY                          Attorney for defendant
Sioux Falls, South Dakota                and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 19, 2008

OPINION FILED **07/30/08**

KONENKAMP, Justice

[¶1.] In this automobile accident case, plaintiff presented evidence at trial of her past and projected medical expenses, her pain and suffering, and her whole-person impairment. At the close of the jury trial, the circuit court granted a directed verdict on the issue of defendant's negligence. The jury returned an award for plaintiff of $286. Despite her claim that the jury's miniscule award was the result of passion or prejudice, plaintiff's motion for a new trial was denied. We affirm because the verdict can be rationally explained with reference to the evidence; thus, there was no abuse of discretion in the denial of a new trial.

## Background

[¶2.] On July 10, 2003, Corrinna Waldner stopped her vehicle at the intersection of Sixth Street and Seventh Avenue in Brookings, South Dakota. She was waiting for the vehicle in front of her to make a left-hand turn. While she was stopped, her car was rear-ended by the vehicle driven by Beth Berglund. Berglund was driving approximately 30 miles per hour when her vehicle struck Waldner's. The impact of the collision pushed Waldner's car into the vehicle in front of her. Berglund later explained that just before the accident, she was looking over at a patrol car and did not see Waldner's stopped vehicle. The patrol car was about 30 feet away, where a patrolman was investigating a disabled vehicle. The officer heard the crash and responded to the accident.

[¶3.] Neither Waldner nor Berglund requested immediate medical attention. The next morning, however, Waldner felt pain in her neck area. She went to see Dr. David Eggers, a chiropractor. She told him that she had been in a car accident and

that her neck hurt when she swallowed. He examined her, gave her an adjustment, and administered ultrasound therapy. He treated her again on July 14, 2003.

[¶4.]     Waldner did not seek further treatment until February 16, 2004. Dr. Eggers's notes from the February 16 appointment state, "Pt. [patient] presents stating that over the last couple of months she's been having some increased discomfort in the neck that I think is still related to that MVA [motor vehicle accident]. Finding that I can't sleep with my pillow any more because it's becoming so uncomfortable and then when I lay flat on the bed by morning my neck is hurting even more so again. It just seems to be getting progressively worse. I was good for a while after this summer's tx's. [treatments] but then again started to bother me off and on."

[¶5.]     Waldner continued to receive treatments from Dr. Eggers, but she thought his treatment style was too rough. In May 2004, she started seeing Dr. Shannon DeBoer, another chiropractor. During the same time, Waldner sought massage therapy from various therapists, but she was not getting complete relief. In October 2004, Waldner went to Dr. Robert Suga, an orthopedic surgeon. He recommended that she discontinue chiropractic treatments. He prescribed medication to relax her muscles. Despite his advice, Waldner continued to receive chiropractic treatments, "Because I felt like I needed it."

[¶6.]     In May 2005, Dr. DeBoer recommended that Waldner see a physical therapist to strengthen her muscles. Waldner received physical therapy at the Brookings Medical Clinic. She later discontinued physical therapy because it aggravated her injury. She resumed chiropractic treatment and massage therapy.

In March 2006, she went back to the Brookings Medical Clinic and obtained a referral to a pain specialist, Dr. Thomas Ripperda. He prescribed pain medication, a stretching program, electrical stimulation, and recommended continued massage therapy, physical therapy, and chiropractic care.

[¶7.]     In the time Dr. Ripperda treated Waldner he also gave her trigger point injections. They did not take her pain away. Waldner also had an MRI, which Dr. Ripperda reported was normal. Waldner discontinued her pain medications because the side effects were worse than the pain. She also discontinued the electrical stimulation treatments because she believed they aggravated her injury. In December 2006, Dr. Ripperda recommended care on an as-needed basis. In Waldner's last appointment with Dr. Ripperda in April 2007, he gave her a whole-person impairment rating of 8%. Dr. Ripperda did not believe any other or new interventions would remedy her situation. Waldner continued with her chiropractic care and massage therapy.

[¶8.]     On May 23, 2006, Waldner brought suit against Berglund. She sought damages for (1) approximately $20,000 in medical expenses, (2) future medical expenses, (3) pain and suffering, and (4) an 8% permanent, whole-person impairment. In the jury trial, the circuit court granted Waldner's directed verdict motion on Berglund's negligence. Thus, the only issue submitted to the jury was the amount of Waldner's damages, if any, legally caused by Berglund's negligence. The jury returned a verdict awarding Waldner $286.

[¶9.]     Waldner moved for a new trial. She asserted that the damage award was inadequate and given under the influence of passion or prejudice. She further

claimed that the uncontroverted evidence presented at trial established that her

medical expenses were a result of the accident. She similarly asserted that

Berglund did not present evidence to contradict her proof of future medical

expenses, pain and suffering, and permanent impairment. After a hearing on the

motion, the court denied a new trial. It could not find any evidence to suggest that

the damage award was the result of passion or prejudice, and it concluded that the

evidence was sufficient to sustain the verdict.

[¶10.]     Waldner appeals, asserting that the court abused its discretion when it

denied her request for a new trial. Berglund filed a notice of review contending that

the court erred when it refused to admit medical reports under SDCL 19-16-8.2.

## Analysis and Decision

[¶11.]     Our standard of review on a denial of a motion for a new trial is well

established:

> Whether a new trial should be granted is left to the sound
> judicial discretion of the trial court, and this Court will not
> disturb the trial court's decision absent a clear showing of abuse
> of discretion. If the trial court finds an injustice has been done
> by the jury's verdict, the remedy lies in granting a new trial. We
> determine that an abuse of discretion occurred only if no judicial
> mind, in view of the law and the circumstances of the particular
> case, could reasonably have reached such a conclusion. Finally,
> we note a decision to grant a new trial stands on firmer footing
> than a decision to deny a new trial.

Schuldies v. Millar, 1996 SD 120, ¶8, 555 NW2d 90, 95 (quoting Junge v. Jerzak,

519 NW2d 29, 31 (SD 1994) (citations omitted)).

[¶12.]     According to Waldner, we need not reweigh the evidence to conclude

that the jury award was inadequate. Rather, she contends that because Berglund

"presented no evidence" that her medical expenses were unreasonable or unrelated

to the accident, her testimony and the medical evidence irrefutably established that the loss she suffered and will suffer in the future was legally caused by Berglund's negligence. Berglund, on the other hand, contends that the verdict is supported by the evidence. According to Berglund, it is apparent that the jury did not believe that Waldner's need for on-going treatment, which started seven months after the accident, was legally caused by Berglund's negligence.

[¶13.]     In a letter decision, the circuit court wrote:

> The Court sees nothing in the record or from the Court's hearing of the trial, observation of the jury, or voir dire that would give any indication whatsoever that the claimed inadequate damages were because of the influence of passion or prejudice on behalf of the jury.
>
> The Court also finds that the evidence was sufficient to justify the verdict. . . . In this case it is easy, from the evidence, to determine how the jury arrived at the dollar sum in the verdict. The verdict amount references the medical expenses for seeing Dr. Eggers within days after the automobile accident. [Waldner] then did not go back to a medical practitioner for some seven months and at the time indicated that recurrent pain had only occurred for a couple months prior to that appointment, and that she had been good for quite a while after the initial consultation with Dr. Eggers. In addition her primary February complaints related to a pain when she leaned her head way back. It is obvious to the Court that the jury felt from the evidence that subsequent medical treatments and any pain [Waldner] may or may not have had were not related to the motor vehicle accident, or were not existent, or necessary.

[¶14.]     In *Itzen v. Wilsey,* we held that "[t]he issue of damages in a personal injury action is peculiarly a question for the jury. The jury's verdict should not be set aside except in those extreme cases where it is the result of passion or prejudice or where the jury has palpably mistaken the rules of law by which damages in a particular case are to be measured." 440 NW2d 312, 313-14 (SD 1989) (citing Stoltz

v. Stonecypher, 336 NW2d 654 (SD 1983); SDCL 15-6-59(a)(5)). "If the jury's verdict can be explained with reference to the evidence rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed." *Id*. at 314.

[¶15.] Here, the jury apparently believed Waldner was damaged by Berglund's negligence, but only to the extent of $286.[*] Waldner's reasons for seeking treatment following the accident were based in large part on her subjective descriptions of pain. While there was objective evidence that Waldner had medical problems, this does not mean they were caused by the accident. In fact, her chiropractor, Dr. Mary Kleinjan, agreed that her opinion that Waldner's need for treatment was a result of the accident was based on speculation.

[¶16.] The medical records also support the jury's verdict. They conflict with Waldner's testimony at trial. She claimed that she experienced continuous pain since the day of the accident and that all her treatments were related to that pain. While she did receive medical care twice in the days following the accident, she did not seek further treatment until seven months later. Dr. Eggers's medical records from that appointment indicate "over the last couple months she's been having some increased discomfort to the neck. . . ." From this the jury could have believed that Waldner's need for treatment was not related to the accident, but was caused by something that happened a couple months before her chiropractic care.

---

[*] This sum equals the charges for Waldner's first two chiropractic treatments from Dr. Eggers. The verdict was general, however, and therefore, we cannot say conclusively what the verdict represents. *See* Andreson v. Black Hills Power & Light Co., 1997 SD 12, ¶14, 559 NW2d 886, 889-90.

[¶17.] Moreover, the jury heard testimony about the physical requirements of Waldner's job as a house cleaner, pushing and pulling a vacuum, bending and lifting, and that she sometimes worked 50 to 60 hours a week. Waldner explained that her job does aggravate her injury and causes her increased pain. One provider recommended that she cut back on the hours she was working. In light of this testimony, the jury could have determined that some of Waldner's pain was work related.

[¶18.] Waldner's medical records further indicate that she had pain in other areas than first reported. For example, when Waldner first received treatment from Dr. Eggers in the days following the accident, she reported pain in the front of her neck when she swallowed and only a little pain in the back of the neck. Then, in her appointments following the seven-month hiatus, Waldner reported to Dr. Eggers that she experienced pain in her neck caused mainly when she tipped her head way back. Finally, Waldner's descriptions of her pain to her subsequent providers included the neck, right shoulder, and low back. These varying descriptions of pain could have led the jury to conclude that Berglund's negligence was not the cause.

[¶19.] This case turns primarily on witness credibility. We have often said that "[t]his Court is not free to reweigh the evidence or gauge the credibility of the witnesses." Miller v. Hernandez, 520 NW2d 266, 272 (SD 1994); *see also* Sporleder v. Van Liere, 1997 SD 110, ¶27, 569 NW2d 8, 14-15; Roth v. Farner-Bocken, 2003 SD 80, ¶8, 667 NW2d 651, 658-59; *Andreson*, 1997 SD 12, ¶8, 559 NW2d at 888. "'The trial court is best able to judge whether the damages awarded by a jury are

the product of passion or prejudice.'" *Andreson*, 1997 SD 12, ¶14, 559 NW2d at 889 (citations omitted).  We conclude that the jury's verdict can be explained with reference to the evidence, and therefore, we cannot say that the circuit court abused its discretion in denying Waldner's new trial motion.  *See id.* ¶8 (quoting *Miller*, 520 NW2d at 272 (citations omitted)).  Because we affirm the circuit court's order denying a new trial, we need not reach Berglund's notice of review issue.

[¶20.]      Affirmed.

[¶21.]      GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.