#24673, #24697-a-JKK
**2008 SD 104**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LILLIAN R. GLANZER, JOHN
GLANZER, and FORDHAM
HUTTERIAN BRETHREN, INC.,                    Plaintiffs and Appellees,
      v.
RICHARD H. REED, M.D.,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JON R. ERICKSON
Judge

* * * *

WILLIAM P. FULLER
SUSAN M. SABERS
HILARY L. WILLIAMSON of
Fuller & Sabers, LLP                         Attorneys for plaintiffs
Sioux Falls, South Dakota                    and appellees.

JEFF BURNS of
Churchill, Manolis, Freeman,
 Kludt, Shelton & Burns
Huron, South Dakota

WILLIAM M. HART
BARBARA A. ZUREK
NICOLE L. BRAND of
Meagher & Geer, PLLP                         Attorneys for defendant
Minneapolis, Minnesota                       and appellant.
              * * * *

CONSIDERED ON BRIEFS
ON SEPTEMBER 30, 2008

OPINION FILED **10/29/08**

KONENKAMP, Justice

[¶1.]    In this medical malpractice action, the jury returned a verdict in favor of the doctor, finding no negligence.  After the verdict, we handed down *Papke v. Harbert*, 2007 SD 87, 738 NW2d 510, where we ruled that the "error in judgment" pattern jury instruction should not be given in medical malpractice cases.  Because that instruction was used in this case, the circuit court granted plaintiff's motion for a new trial.  Finding no abuse of discretion, we affirm.

## Background

[¶2.]    On February 24, 2001, Lillian Glanzer went to the Huron Medical Clinic complaining of severe abdominal pain.  After an examination by Dr. Becker and CT scan, Glanzer had a surgical consultation with Dr. Richard Reed.  Dr. Reed concluded that Glanzer's gallbladder was the likely cause of her severe pain and advised that she have it removed.  He performed the laparoscopic surgery at 4:00 p.m. that same afternoon.

[¶3.]    During the operation, Dr. Reed encountered a considerable amount of adhesions, thin strands of scar tissue that can cause organs to stick together.  These adhesions were produced from her four previous cesarean sections, a hernia operation, and a hysterectomy.  Dr. Reed was required to "take down" or cut apart the adhesions.  This increased the risk that Glanzer's bowels could be perforated, a serious, sometimes fatal, complication.  Dr. Reed was able to take down a significant number of adhesions.  According to his medical records, he chose not to take down certain adhesions located near the gallbladder because he was concerned

he might injure the small bowel. Ultimately, Dr. Reed removed Glanzer's gallbladder and finished her surgery.

[¶4.] Although laparoscopic surgery is generally accompanied with a quick recovery and little or no pain, Glanzer's recovery was slow. The day after her surgery, she complained of severe abdominal pain and nausea. Dr. Reed was prevented from seeing Glanzer that day because of severe winter weather. But he was in regular contact with her nurses and Dr. Becker.

[¶5.] On February 26, two days after the surgery, Dr. Reed personally examined Glanzer. He considered her symptoms red flags of a possible bowel perforation and noted in her medical records that if the symptoms did not improve he would perform an exploratory laparoscopy. These symptoms included: nausea, vomiting, low urine output, distended abdomen, absence of bowel sounds, little to no bowel function, extreme abdominal pain, and high white blood cell count. That same day, Glanzer developed pneumonia in her left lung. Pneumonia can occur postoperatively when a patient is not mobile and is experiencing abdominal pain that causes shallow breathing. Glanzer, however, had a bowel movement and did not have a fever, which indicated to Dr. Reed that she did not have a perforated bowel.

[¶6.] On February 27, Glanzer was in less pain. She had good bowel sounds, experienced another bowel movement, and had a soft abdomen. Dr. Reed noted that her white blood cell count was also returning to normal. She still had low urine output, and an x-ray showed the presence of free air in her abdomen. That night, however, Glanzer's condition rapidly deteriorated. On the morning of February 28,

she was rushed to the intensive care unit in response to a multi-system failure. She was short of breath, with an increased pulse rate, abdominal distention, and no bowel sounds. A CT scan revealed free fluid in her abdomen.

[¶7.]     Dr. Reed believed that Glanzer's bowel had now perforated, based on her symptoms and the presence of free fluid in her abdomen. He took her to surgery where he located and repaired the bowel perforation. After the surgery her health did not improve. Dr. Reed performed another surgery. Glanzer still did not recover and was ultimately transferred to Avera McKennan Hospital in Sioux Falls. There, she underwent multiple surgeries and a lengthy recovery.

[¶8.]     Glanzer brought suit alleging that Dr. Reed breached the standard of care in the performance of his medical duties and surgical treatment. She further alleged that Dr. Reed did not obtain her informed consent before surgery. In preparation for trial, Glanzer moved in limine to prevent Dr. Reed from relying on or referring to the error in judgment instruction. Her motion was denied. During the settling of jury instructions, Dr. Reed requested, and Glanzer objected to, the error in judgment instruction. The court overruled the objection and the instruction was given to the jury. The jury returned a verdict for Dr. Reed on May 17, 2007.

[¶9.]     Glanzer moved for a new trial claiming, among other things, that the error in judgment instruction was prejudicial and affected her substantial rights. She relied on our decision in *Papke*, 2007 SD 87, 738 NW2d 510, a case handed down on August 15, 2007. After a hearing, the circuit court granted Glanzer's motion. In its findings of fact and conclusions of law, the court found that the "error in judgment instruction was an integral part of" Dr. Reed's defense. Thus, it

concluded that in all probability the instruction had some effect on the verdict and prejudiced Glanzer. Dr. Reed appeals asserting that the court abused its discretion when it granted Glanzer a new trial.

## Analysis and Decision

[¶10.]    In *Papke*, we examined the relevance of the error in judgment jury instruction, which stated:

> A physician is not necessarily negligent because the *physician errs in judgment* or because efforts prove unsuccessful.
>
> The physician is negligent if the *error in judgment* or lack of success is due to a failure to perform any of the duties as defined in these instructions.

2007 SD 87, ¶14, 738 NW2d at 516 (emphasis added in *Papke*). Because the instruction "in no way further defines or explains the applicable standard of care to the jury," we ruled that "such language should not be used in ordinary medical malpractice actions." *Id.* ¶50. However, as in all cases where an erroneous jury instruction was used, for the error to be reversible, the complaining party must establish prejudice. In *Papke*, the plaintiff showed sufficient prejudice, and we held that the use of the instruction amounted to reversible error. *Id.* ¶52. In another medical malpractice case using this erroneous instruction, the plaintiff did not establish that the instruction in all probability produced an effect on the verdict. Veith v. O'Brien, 2007 SD 88, ¶56, 739 NW2d 15, 31. Therefore, we held that the use of the instruction in that case did not constitute reversible error.[1] *Id.*

---

1.    Concededly, there may be little to distinguish our holding in *Veith*, except perhaps (1) the generic nature of the objection made to the error in judgment instruction, (2) the fact that, besides the negligence claim, informed consent

(continued . . .)

[¶11.]	Here, we have yet another medical malpractice case where the error in judgment instruction was used.  Glanzer claims that the use of the instruction constituted prejudicial error akin to *Papke*.  Dr. Reed, on the other hand, avers that *Veith* controls, as the error in judgment instruction was inconsequential to his defense.  *Papke* and *Veith* produced no different rule on the use of the error in judgment instruction.  *Papke* banned the instruction as error; *Veith* in no way qualified that holding.[2]

[¶12.]	What distinguishes *Papke* and *Veith* is the application of the underlying facts to our law requiring prejudice before an erroneous instruction will be deemed reversible.  While the plaintiff in *Papke* was able to establish sufficient prejudice, the facts giving rise to that prejudice did not create a threshold standard for reversible error when the error in judgment instruction is used.  *See Papke*, 2007 SD 87, ¶52, 738 NW2d at 528 (error admitted, heavy reliance on and reference to the error in judgment instruction during closing argument, and claim that the instruction is vital to the defense theory).  Likewise, our holding in *Veith* should not be understood to mean that we will decline to find prejudice if the defendant proves

_____

(. . . continued)
	was a major issue, and (3) the instruction may have been correct, in part, because of the doctor's choice between two accepted forms of treatment.  See the following footnote.

2.	In a footnote in *Papke*, we acknowledged that in certain limited circumstances an instruction similar to the error in judgment instruction might be warranted.  2007 SD 87, ¶50 n15, 738 NW2d at 527 n15.  However, this does not mean that use of the error in judgment instruction as termed in South Dakota Pattern Jury Instructions would ever be permissible.  *See Veith*, 2007 SD 88, ¶54, 739 NW2d at 30 (use of "error" is inappropriate).

the instruction was "an inconsequential focus" of the defense. *See* 2007 SD 88, ¶54, 739 NW2d at 30.

[¶13.]     Our duty, rather, is to examine the facts of each case and determine if the complaining party established that "'in all probability [the erroneous instruction] produced some effect upon the verdict and [was] harmful to the substantial rights of a party.'" *Papke*, 2007 SD 87, ¶50, 738 NW2d at 527 (quoting Vetter v. Cam Wal Elec. Coop., Inc.*,* 2006 SD 21, ¶10, 711 NW2d 612, 615) (citation omitted). Here, the circuit court granted a new trial, finding the instruction prejudicial. Therefore, we review the court's decision under the abuse of discretion standard. *See* Waldner v. Berglund, 2008 SD 75, ¶11, 754 NW2d 832, 835 (citations omitted). "Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion." *Id.* (quoting Schuldies v. Millar, 1996 SD 120, ¶8, 555 NW2d 90, 95 (quoting Junge v. Jerzak, 519 NW2d 29, 31 (SD 1994) (citations omitted))).

[¶14.]     According to Dr. Reed, the court abused its discretion when it concluded that the instruction was prejudicial. He argues that because he never admitted that he made an error, and never referred to or relied on the error in judgment language in his defense, the instruction was inconsequential. While Glanzer agrees that Dr. Reed never specifically referred to the instruction or admitted that he erred, she contends that the underlying theme of his defense was that he was not negligent because he had to exercise his judgment to determine how to proceed.

[¶15.] The circuit court considered the evidence and concluded that the instruction in all probability produced some effect on the verdict and harmed Glanzer's substantial rights. In its findings of fact and conclusions of law, the court identified Dr. Reed's defense as an "argument that in his judgment other complications were more likely than perforation and therefore in his judgment there was no need to act to repair the perforation." The court further declared that "[t]he error in judgment instruction was an integral part of Defendant's theory, that being, that although a perforation occurred during the course of laparoscopic surgery in Dr. Reed's judgment other complications were more likely than the perforation."

[¶16.] In considering a new trial motion, a judge is not obliged to view the evidence in a light most favorable to the nonmoving party. Henry v. Henry, 2000 SD 4, ¶9, 604 NW2d 285, 289 (citing 1 S. Childress and M. Davis, Federal Standards of Review § 5.09 (2ded 1992) (discussing Rule 59 of the Federal Rules of Civil Procedure)). Thus, the court was not required to view the evidence in a light most favorable to Dr. Reed. Nevertheless, Dr. Reed at all times asserted that the perforation occurred on February 28, several days after the surgery, rather than "during the course of laproscopic surgery" as found by the court. There is no dispute that the error in judgment instruction was never mentioned or discussed with the jury by the defense or its witnesses. While Dr. Reed and his expert testified that Dr. Reed was required to make certain judgment calls based on Glanzer's symptoms, at all times the defense and its witnesses maintained that Dr. Reed made the right decisions based on the circumstances presented to him. Therefore,

based on our review, we conclude that the circuit court erred when it found that Dr. Reed's theory was that "a perforation occurred during the course" of the laparoscopic surgery.

[¶17.]     Setting aside for the moment this erroneous factual finding, we examine the record itself to determine whether the court abused its discretion when it granted Glanzer a new trial. According to Glanzer, the evidence proved that Dr. Reed was aware she was possibly suffering from a perforated bowel. She relies on his medical notes from his February 26 examination where he stated, "I did a lot of taking down of adhesions during that laparoscopic procedure. Does she have a hole in the bowel? Or ileus?"[3] Dr. Reed then wrote, in his notes following the second surgery, that

> [t]here was an area in the lower abdomen where small bowel was stuck against the midline abdominal scar. *This area was an area that I bluntly probed to see how loose it was*; how easily it would be to take down and I found it extremely difficult so I did not attempt to take any adhesions down in this area. However, *apparently, probing with a blunt dissector had perforated small bowel when I was trying to make my decision and there is where I found the hole.*

(Emphasis added). In his defense, Dr. Reed maintained that Glanzer's bowel did not perforate until February 28, despite his thoughts expressed in his medical notes. According to Dr. Reed, Glanzer's symptoms pre-February 28, were not indicative of a perforated bowel and did not support exploratory surgery. Relying on medical judgment, Dr. Reed and his expert testified that he correctly and timely

---

3.     An "ileus" is an intestinal obstruction. Taber's Cyclopedic Medical Dictionary, 824 (15thed 1985).

diagnosed Glanzer's perforated bowel on February 28, and took appropriate medical action thereafter.

[¶18.]    Thus, the question remains, did the circuit court abuse its discretion in granting a new trial?  "Although we have repeatedly invoked stock definitions, the term 'abuse of discretion' defies an easy description.  It is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable."  Burley v. Kytec Innovative Sports Equipment, Inc., 2007 SD 82, ¶12, 737 NW2d 397, 402 (quoting Arneson v. Arneson, 2003 SD 125, ¶14, 670 NW2d 904, 910 (citation omitted)).  We certainly can read the transcripts and see that the words "error in judgment" were never mentioned by the defense, but we cannot as surely conclude that the jury did not rely on the erroneous instruction.  Conscientious jurors study the instructions on their own, often without prompting from counsel.  Whether the word "judgment" was invoked or not, this was a case of medical judgment.

[¶19.]    Despite the circuit court's erroneous fact finding, there is support in the record for the court's conclusion that in all probability the instruction produced some effect on the verdict and harmed Glanzer's substantial rights.  *See Papke*, 2007 SD 87, ¶50, 738 NW2d at 527 (citations omitted).  Recognizing that "a decision to grant a new trial stands on firmer footing than a decision to deny a new trial" we cannot say the court abused its discretion.  *See Junge*, 519 NW2d at 31 (citation omitted).

[¶20.]    Affirmed.

#24673, #24697

[¶21.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶22.] MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.