#27191-a-SLZ

**2015 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JILL LENARDS,                                    Plaintiff and Appellant,

    v.

JOHN DEBOER,                                  Defendant and Appellee.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RONALD K. ROEHR
Judge

\* \* \* \*

NANCY J. TURBAK BERRY
SEAMUS W. CULHANE of
Turbak Law Office, PC
Watertown, South Dakota                  Attorneys for plaintiff
                                                              and appellant.


DEREK A. NELSEN of
Fuller & Williamson, LLP
Sioux Falls, South Dakota                  Attorneys for defendant
                                                              and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 23, 2015

OPINION FILED **06/17/15**

#27191

ZINTER, Justice

[¶1.] John DeBoer and Jill Lenards were in a car accident. Lenards sued DeBoer for negligence, limiting her damages claim to pain and suffering. The jury returned a general verdict for DeBoer, and the circuit court denied Lenards' motion for a new trial. Lenards appeals. We affirm.

*Facts and Procedural History*

[¶2.] On June 4, 2009, Lenards was stopped on a highway waiting to turn left with her turn signal on. DeBoer, who was traveling in the same direction, was unable to stop in time to avoid colliding with the rear end of Lenards' car. DeBoer pleaded guilty to careless driving as a result of the accident. At trial, DeBoer claimed that the accident was unavoidable because the sun unexpectedly reflected off Lenards' back window causing him to temporarily lose his vision. DeBoer, however, also testified that the accident was "completely his fault."

[¶3.] Immediately after the accident, Lenards told DeBoer that she was alright. Lenards also told both her OnStar attendant and the officer on scene that she did not require an ambulance. Lenards' sister gave Lenards a ride home. The two decided to go to the emergency room because Lenards was starting to see "dots." Lenards told the emergency room doctor that her neck hurt; however, Lenards did not say that her back hurt. The emergency room doctor examined Lenards and found no vertebral tenderness, no CVA tenderness, and no hip tenderness.

[¶4.] On June 9, 2009, five days after the accident, Lenards saw her doctor. Lenards complained of chronic dizziness—related to an inner ear tumor—and of neck pain. She had a CT scan of her neck. The CT scan was negative for any

-1-

injury, and she was sent home. Lenards did not complain of back pain at this appointment. She would not indicate that her back hurt until twenty-one days after this appointment—over three weeks after the accident.

[¶5.]      On June 30, 2009, Lenards went to her family practice clinic and complained of lower back pain. An x-ray of her lumbar spine was taken, and her doctor indicated that her SI joints were normal. Her doctor recommended that Lenards attend physical therapy. Her first physical therapy appointment was on July 6, 2009. At her second appointment, Lenards reported that her lower back was better. On July 29, 2009, Lenards reported no numbness, no weakness, and no back pain. She felt well enough that she canceled her remaining appointments and stopped going to physical therapy.

[¶6.]      Lenards started chiropractic treatment six weeks after she ended physical therapy. She sought the treatment for neck and back pain. Lenards continued to seek chiropractic treatment for five years; however, she would take breaks in treatment when her pain decreased. These breaks lasted as long as five months. On November 9, 2009, one of Lenards' doctors wrote that Lenards "was involved in a motor vehicle accident, following which she was evaluated for spinal injuries. None were identified. However, the patient does have evidence for arthritis. This could definitely contribute to her future of having chronic back pain secondary to chronic arthritis and large pendulous breasts." Lenards had a slip-and-fall accident that caused additional pain in February 2011. She also underwent breast reduction surgery because of "longstanding neck and back pain secondary to macromastia," a condition unrelated to the accident.

[¶7.]  On May 22, 2012, Lenards sued DeBoer for pain and suffering allegedly caused by the accident.  Lenards did not request damages for the medical bills she incurred following the accident.  In fact, she successfully obtained an *in limine* ruling prohibiting the defense from introducing her medical bills associated with the accident.  Lenards' trial strategy was to limit her claim to pain and suffering she claimed to have suffered as a result of the accident.  Lenards also limited that claim to a lower back injury.  She told the jury that she was not suing for neck pain or upper back injuries.  Her claims were limited to pain and suffering damages from her lower back and leg.[1]

[¶8.]  Dr. Thomas Ripperda, DeBoer's medical expert, opined that any pain complaints related to the accident had been resolved by July 31, 2009—less than two months after the accident.  According to Dr. Ripperda, pain complaints after August 12, 2009, could not be attributed to the accident.  He also testified that Lenards' arthritis and body habitus could lead to persisting back problems.  Dr. Ripperda believed that, to a reasonable degree of medical certainty, Lenards' low

---

1. At trial, Lenards' counsel told the jury that Lenards was only suing for low back pain and leg pain.  Counsel informed the jury that Lenards' neck pain was "really not part of this lawsuit[]" and that she was not "suing John DeBoer . . . for neck pain[.]"  Lenards stated in her opening statement that "back pain" was the "reason . . . why we are here."  Counsel then went on to state: "We don't want anything for the upper back pain" and "quite frankly, the neck pain isn't that big of a deal."  Lenards' counsel concluded, "what we are here for is the low back pain."

back pain could have been caused by a combination of obesity and macromastia. He indicated that there were no objective findings of any injury.[2]

[¶9.]     At trial, the circuit court denied Lenards' motion for a directed verdict on liability. The court also instructed the jury, over Lenards' objection, that DeBoer could be excused from liability if it found that the collision was an "unavoidable accident." DeBoer requested that the case be decided by the jury on special interrogatories. Lenards objected and argued for a general verdict, which was submitted to the jury. Lenards asked for $115,000 for pain and suffering. The jury found for DeBoer. Lenards moved for a new trial, which was denied by the court. Lenards now appeals the denial of that motion raising three liability issues: whether the evidence was insufficient to support the jury's verdict; whether the circuit court erred in instructing the jury that it could consider whether this was an unavoidable accident; and, whether the issue of liability should have been directed in her favor.[3]

*Decision*

[¶10.]     The denial of a motion for a new trial is reviewed for an abuse of discretion. *Hewitt v. Felderman*, 2013 S.D. 91, ¶ 14, 841 N.W.2d 258, 262. "This

---

2.     Dr. Ripperda's independent medical evaluation reflected that he had "some concerns regarding the relatedness of the low back symptoms to the motor vehicle crash[.]" While he admitted it could be "medical[ly] probable" and that her symptoms, "in theory," could be from the "pressure from a seatbelt from a motor vehicle crash," he could not "state with any degree of reasonable medical probability that [Lenards' symptoms were] directly related to the motor vehicle crash[.]" Dr. Ripperda also wrote that it was "questionable" whether Lenards' leg symptoms were caused by the accident.

3.     Lenards' motion for judgment as a matter of law was not preserved because it was not renewed at the close of the evidence.

Court will uphold a jury verdict 'if the jury's verdict can be explained with reference to the evidence,' viewing the evidence in a light most favorable to the verdict." *Id.* (quoting *Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 18, 780 N.W.2d 507, 512). "This Court should only set a jury's verdict aside in 'extreme cases' where the jury has acted under passion or prejudice or where 'the jury has palpably mistaken the rules of law.'" *Id.* (quoting *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 10, 667 N.W.2d 651, 659). "'[I]f a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied.'" *Zahn v. Musick*, 2000 S.D. 26, ¶ 31, 605 N.W.2d 823, 830 (quoting *Morrison v. Mineral Palace*, 1998 S.D. 33, ¶ 11, 576 N.W.2d 869, 872).

[¶11.] Lenards' alleged errors all relate to liability. Lenards argues that she was entitled to a new trial because DeBoer essentially admitted liability and she was indisputably injured. Lenards points out that even Dr. Ripperda said that Lenards was injured.

[¶12.] Lenards also claims that at least some damages were undisputed. We disagree. Lenards only sought pain and suffering damages for her lower back and leg, and evidence was introduced that the accident did not cause the pain and suffering she experienced in those body regions. Although Dr. Ripperda noted that "Lenards did suffer a thoracic and lumbar strain from the motor vehicle crash[,]" he expressed "concerns regarding the relatedness of the low back symptoms[.]" Dr. Ripperda also thought it was "questionable" whether Lenards' leg symptoms were caused by the accident. Because Lenards limited her claim to pain and suffering from her leg and lower back, the jury could have accepted Dr. Ripperda's concerns,

especially in light of the fact that Lenards did not complain of lower back or leg pain until over three weeks after the accident. Further, Lenards' tests following the accident showed no objective signs of injury. And finally, the jury could have found, after considering the evidence from her doctor, physical therapist, and chiropractor, that Lenards' pain and suffering was caused from a combination of her non-accident related health issues—arthritis, obesity, and macromastia.

[¶13.] Considering all the evidence, the question of damages caused by this accident was a disputed question of fact for the jury. *See Waldner v. Berglund*, 2008 S.D. 75, ¶ 14, 754 N.W.2d 832, 836 ("[T]he issue of damages in a personal injury action is peculiarly a question for the jury.") (quoting *Itzen v. Wilsey*, 440 N.W.2d 312, 313 (S.D. 1989)) (internal quotation mark omitted). Moreover, "pain and suffering . . . damages are unique since they do not compensate a plaintiff for a known monetary loss which has been experienced or is likely to be experienced. Thus, there is no way to quantifiably measure the amount that a trier of fact should award in dollars." *Bakker v. Irvine*, 519 N.W.2d 41, 48 (S.D. 1994). Consequently, under the facts of this case, the jury was free to accept or reject part or all of Lenards' claim that the $115,000 she sought for pain and suffering was causally connected to this accident.

[¶14.] Because Lenards' damages claim was the subject of a factual dispute, and because the jury returned a general verdict, we are precluded from reviewing her liability issues. "[I]n a civil case, if a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory." *Thomas v.*

*Sully Cnty.*, 2001 S.D. 73, ¶ 7, 629 N.W.2d 590, 592 (quoting *Eberle v. Siouxland Packing Co., Inc.*, 266 N.W.2d 256, 258 (S.D. 1978)). "Because a general verdict form was used, 'we have no way of knowing whether the jury' based its decision" on the issue of liability or damages. *See id.* at 594.

[¶15.]     The use of a general verdict is especially problematic in this case. Lenards sought only unquantifiable pain and suffering damages, and the evidence was disputed regarding that claim. Accordingly, even if the circuit court erred in submitting the case to the jury on liability and in giving an unavoidable accident instruction, the jury verdict must be presumed to be supported because of the disputed damages. *See id.* We therefore affirm without reaching Lenards' liability issues.

[¶16.]     GILBERTSON, Chief Justice, and SEVERSON and WILBUR, Justices, concur.

[¶17.]     KERN, Justice, concurs specially.


KERN, Justice (concurring specially).

[¶18.]     I write specially to emphasize that the unavoidable accident instruction given in this case was improper. We said in *Meyer v. Johnson* that the "unavoidable accident instruction usually is unnecessary." 254 N.W.2d 107, 110 (S.D. 1977) (quoting *Cordell v. Scott*, 79 S.D. 316, 322-23, 111 N.W.2d 594, 598 (1961)). This is because "[i]n the ordinary negligence action the jury is adequately instructed on the ultimate issues by instructions on negligence, contributory negligence, burden of proof, and proximate cause." *Id.* (quoting *Cordell*, 79 S.D. at

322, 111 N.W.2d at 598). Further, we remarked that the instruction *may be* proper in a case "where there is evidence that something other than the negligence of one of the parties caused the mishap." *Id.* (quoting *Cordell*, 79 S.D. at 323, 111 N.W.2d at 598). We have also stated that the element of surprise is necessary to warrant the instruction. *Alley v. Siepman*, 87 S.D. 670, 678, 214 N.W.2d 7, 11 (1974).

[¶19.] We employ an objective test to assess whether a certain phenomenon may constitute a viable "surprise" worthy of an unavoidable accident instruction. *See id.* at 677-78, 214 N.W.2d at 11. In *Howard v. Sanborn*, we held that the unavoidable accident instruction was not proper where the incident was reasonably foreseeable. 483 N.W.2d 796, 799 (S.D. 1992). We determined that blinding headlights do not satisfy the surprise element for an unavoidable accident instruction. *Id.* "'[B]linding headlights . . . [are] not an intervening cause'" of a collision, but are among the known conditions that impose a duty on drivers to exercise ordinary care. *Id.* (quoting 2 Blashfield Automobile Law & Practice § 53.6). Furthermore, the Court noted that rather than excusing liability, the sudden presence of a blinding light would call for increased care by a motorist, such as "a diminution of speed." *Id.* (citing *Pleinis v. Wilson Storage & Transfer Co.*, 75 S.D. 397, 400, 66 N.W.2d 68, 71 (1954)). The same rationale applies here. Sunlight reflecting on a clear summer's day is a condition known to drivers or, at the very least, a condition of which a reasonably prudent driver should be aware. There was no objective basis to warrant the unavoidable accident instruction in this case.

[¶20.] When we first addressed the unavoidable accident doctrine in *Cordell*, we elected to severely limit the use of this instruction. 79 S.D. at 320, 111 N.W.2d

at 596. Particularly relevant here, however, is the language we quoted from the

California Supreme Court:

> The instruction is not only unnecessary, but it is also confusing. When the jurors are told that 'in law we recognize what is termed an unavoidable or inevitable accident' they may get the impression that unavoidability is an issue to be decided and that, if proved, it constitutes a separate ground of nonliability of the defendant. *Thus they may be misled as to the proper manner of determining liability, that is, solely on the basis of negligence and proximate causation.* The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding.

*Id.* at 320-21, 111 N.W.2d at 597 (emphasis added) (quoting *Butigan v. Yellow Cab Co.*, 320 P.2d 500, 505 (Cal. 1958)). This is especially true in this case where the

error of giving the unavoidable accident instruction was compounded by the

reference to the unavoidable accident defense within instructions 20 and 21 (safety

statute instructions).[4] The reference had the potential to further confuse the jury

and gave undue emphasis to the unwarranted unavoidable accident instruction.

---

4. Jury instruction 20 provided:

> A safety statute in this state provides:
>
> > Any person who drives any vehicle upon a highway carelessly and without due caution, at a speed or in a manner so as to endanger any person or property is guilty of careless driving.
>
> Pleading guilty to such a violation does not conclusively establish the violation, but constitutes an admission against interests.
>
> This statute sets the standard of care of a reasonable person. If you determine that John DeBoer violated it, his violation is negligence *unless you find that the accident was unavoidable.*

(continued . . .)

[¶21.] Our pattern jury instructions make no recommendation as to a proper formulation of the unavoidable accident instruction. *See* South Dakota Pattern Jury Instruction 20-30-10. This is likely because the propriety of the instruction is dependent upon the facts of the case, and its use is disfavored. Indeed, we have found that the use of the instruction is inappropriate or constitutes reversible error in a significant majority of cases.[5]

[¶22.] When we decided the *Cordell* case in 1961, we noted that California's rejection of the unavoidable accident instruction was "unique." 79 S.D. at 320, 111 N.W.2d at 596. Today, however, 21 States and the District of Columbia have

_____

(. . . continued)
> (Emphasis added.)

> Jury instruction 21 provided:

>> A safety statute in this state provides:

>>> The driver of a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and condition of the highway.

>> This statute sets the standard of care of a reasonable person. If you determine that John DeBoer violated it, his violation is negligence *unless you find that the accident was unavoidable.*

> (Emphasis added.)

5. This Court affirmed the denial of the instruction in the following cases: *Boyd v. Alguire*, 82 S.D. 684, 693, 153 N.W.2d 192, 197 (1967); *Alley*, 87 S.D. at 677-78, 214 N.W.2d at 11; *Carpenter v. City of Belle Fourche*, 2000 S.D. 55, ¶ 32, 609 N.W.2d 751, 764. In the following cases, the use of the instruction was determined to be error: *Meyer*, 254 N.W.2d at 110; *Del Vecchio v. Lund*, 293 N.W.2d 474, 476 (S.D. 1980); *Plucker v. Kappler*, 311 N.W.2d 924, 925 (S.D. 1981); *Hoffman v. Royer*, 359 N.W.2d 387, 389 (S.D. 1984); *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 17 (S.D. 1988); *Howard*, 483 N.W.2d at 799. On three occasions, the Court held that the giving of the instruction was not reversible error: *Cordell*, 79 S.D. at 323, 111 N.W.2d at 598; *Herman v. Spiegler*, 82 S.D. 339, 343-44, 145 N.W.2d 916, 918 (1966); *Artz v. Meyer*, 1999 S.D. 156, ¶ 17, 603 N.W.2d 532, 536.

abandoned the unavoidable accident instruction and 15 States have severely criticized or limited it. *Hancock-Underwood v. Knight*, 670 S.E.2d 720, 723 (Va. 2009).[6] Certainly our own precedents and this national trend are cause to question the continued use of the unavoidable accident instruction.

[¶23.] Based on the evidence in this case, unavoidability should not have been an issue, and the circuit court erred when it gave the unavoidable accident instruction. Even so, I must concur with the Court's decision to affirm the jury verdict because a general verdict form was used at trial. The use of this verdict form prevents us from determining whether the jury concluded that DeBoer was not at fault, or that DeBoer was at fault but Lenards' alleged damages were not caused by the accident or established by the evidence. *See* majority opinion *supra* ¶¶ 14-15. It is settled law that we are bound to "assume that [the case] was decided on the proper theory." *Thomas*, 2001 S.D. 73, ¶ 7, 629 N.W.2d at 592 (quoting *Eberle*, 266 N.W.2d at 258).

---

6.      In *Knight*, the Virginia Supreme Court stated:

> "Upon review of the decisions of the highest courts of the various states, it appears that twenty states [(now twenty-one states including Virginia)] and the District of Columbia do not permit [the unavoidable accident] instruction under any circumstance; fifteen states have strongly criticized the instruction but allow it in rare circumstances; nine states appear to allow the instruction; and the highest courts of five states have not addressed the issue."

*Knight*, at 723 (footnotes omitted). For a full list of the cases indicating each jurisdiction's disposition on the unavoidable accident instruction, *see Knight*, at 723 nn.1-4.